THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES MICHAELS, Defendant-Appellant.

Third District   No. 3—91—0048

Opinion filed March 5, 1992.—Rehearing denied September 30, 1992.

Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (Nancy Rink Carter, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

A jury found the defendant, James Michaels, guilty of home invasion, armed robbery, and aggravated battery (Ill. Rev. Stat. 1989, ch. 38, pars. 12—11(a)(2), 18—2(a), 12—4(b)(1)). The trial court entered a judgment of conviction on the aggravated battery charge, but found that it merged into the home invasion charge. The court then sentenced Michaels to two concurrent 15-year terms of imprisonment for home invasion and armed robbery. Michaels appeals.

The record reveals that on June 8, 1990, two men wearing black clothing and masks broke into the home of Chesla and Tina Hill. Awakened by the scream of his wife, Chesla saw one of the men standing near him holding a knife. Chesla began struggling with that man and was cut several times. Although the other man struck Chesla with a bamboo stick, Chesla continued to struggle, and eventually the two intruders fled.

After the two men fled, Tina discovered $90 was missing from her purse. The police were notified and Tina and Chesla were asked to view a lineup that included the defendant. Tina was unable to identify the defendant. However, because the defendant's mask had moved during the struggle, Chesla was able to identify him.

Paul Richardson testified that the defendant admitted to him that he had been involved in the robbery. Richardson indicated that he had agreed to testify against the defendant in exchange for the State dropping drug charges pending against him.

Christopher Williams also stated that the defendant admitted committing the offense. At the time of the trial, Williams was serving a sentence for armed robbery and had agreed to testify in return for a reduced sentence on another charge of armed robbery.

The defense called Brian Fink, a deputy sheriff at the Will County Adult Detention Facility, who testified that he had a public discussion with the defendant about the details of the case. He indicated that the discussion could have been overheard by other inmates.

Both the defendant's mother, Sharon Michaels, and his girl friend, Cary Marcinko, testified that the defendant had been home at the time the crime was being committed. During cross-examination, Sharon and Cary were both asked why they waited until the week of the trial to inform the sheriff's department that they were with the defendant at the time of the crime. Sharon responded that nobody had ever asked her, while Cary responded that no one talked to her and she did not know what to do.

Following deliberations, the jury found the defendant guilty of home invasion, armed robbery, and aggravated battery. However, the trial court ruled that, as a matter of law, it would be improper to convict the defendant of both aggravated battery and home invasion because both charges involved the same victims, the same incident, and the same course of events. The trial court entered a judgment of conviction on the aggravated battery charge, but found that it merged into home invasion. The trial court then sentenced the defendant to two concurrent 15-year terms of imprisonment for home invasion and armed robbery.

On appeal, the defendant initially argues that he was denied a fair trial because during closing arguments the prosecutor told the jury that the alibi was recently concocted and that the defense witnesses were lying. The defendant states that the prosecutor knew that the reason the State had not been informed of the alibi defense earlier was because of an administrative mix-up in the public defender's office, not because it had been recently concocted. Therefore, the defendant contends that it was improper for the prosecutor to inform the jury in closing arguments that the alibi defense had never been mentioned until the week of the trial.

■ It is improper for a prosecutor to argue an inference from the evidence when the prosecutor knows that the inference is false. (*People v. Cole* (1980), 80 Ill. App. 3d 1105, 400 N.E.2d 931.) However, it is proper for the prosecutor to comment on the witnesses' credibility if witness credibility is an issue and the prosecutor's comments are based on the evidence. *People v. Mays* (1982), 91 Ill. 2d 251, 437 N.E.2d 633.

■ In the instant case, the State filed a pretrial motion to preclude the alibi defense. At the hearing on the motion, defense counsel disclosed to the State that the defendant had informed the public defender's office of a potential alibi defense sometime before notice to the State was actually filed by the public defender's office. Although the record does not disclose the actual date upon which the defendant informed the public defender's office of his alibi, it appears to have been weeks before the trial. When asked at the hearing why notice of the alibi defense was not disclosed earlier, defense counsel admitted that he had not thought it was necessary until he learned that the State had a stronger case than he had anticipated. Additionally, some administrative inadvertence at the public defender's office had prevented the notice from being properly filed. Because the failure to timely file the notice did not appear to be the fault of the defendant, the trial court allowed the alibi defense to be presented.

As noted above, Sharon Michaels and Cary Marcinko then testified at trial that the defendant was with them when the crime was being committed. In his closing arguments, the prosecutor stated:

> "Ladies and gentlemen, is it consistent if you knew that somebody did not commit an offense and you knew you were with them, that you would withhold mentioning that to anybody, that you would not go down to the Sheriff's Office, to the local police agency, and tell them that James Michaels didn't commit this, I was with him? It didn't happen. They never went to a police agency and they want you to believe that

James Michaels was home. They waited [until] October 23, when Investigator Morrison sat them down at the Laraway Station and talked to them, to tell them about that.

Now, ladies and gentlemen, that just does not make sense. Now, [defense counsel] has talked about contrived stories and fabrications. Ladies and gentlemen, it is a fabrication, I submit to you that it is a fabrication, because it is not consistent. It is not logical.

What would be done if you had that information, if somebody had that information, ladies and gentlemen? They would go forward and they would submit it, and they would try to find the truth. They wouldn't hold it back.

Again, they do have an interest in this. There is a bias here. They know this man. They live with him. They love him. It's his mother. It's his girlfriend. The father of her children.

Ladies and gentlemen, the evidence here shows that James Michaels is guilty. *** And now there is a fabricated alibi defense here that he wasn't there. That was never mentioned until the 23rd of October, ladies and gentlemen. That wasn't too long ago. And this offense was committed in June, June 18. There is a lot of time there, ladies and gentlemen. And all of a sudden it appears.

Nobody knows about it until the very end. Ladies and gentlemen, this man is guilty, and I ask you to find him guilty of these offenses. Thank you."

It is apparent when the prosecutor's remarks are read in context that he was attacking the credibility of Sharon Michaels and Cary Marcinko. The State is not precluded from inquiring into the credibility of defense witnesses merely because a defendant has previously informed the public defender of a potential alibi defense. Here, the State properly questioned the alibi witnesses' credibility based upon the length of time that had passed before they came forward. The State's comments were all based on evidence presented at trial, in that both witnesses admitted that they did not inform anyone of the alibi until just prior to the trial date. Accordingly, we find that the prosecutor's comments were proper.

The defendant next argues that this cause must be remanded for additional hearings because the trial court failed to make even a preliminary inquiry into the defendant's *pro se* post-trial motion which alleged ineffective assistance of counsel.

When a defendant during post-trial proceedings asserts that his attorney afforded him ineffective representation at trial, no new

counsel should be appointed to represent the defendant if the trial judge conducts a preliminary investigation and determines the defendant's allegations to be spurious or pertaining only to trial tactics. *People v. Nitz* (1991), 143 Ill. 2d 82, 572 N.E.2d 895.

■ In the instant case, the record shows that the trial court examined the defendant's allegations and found them to be either spurious or pertaining only to trial tactics. The court made specific findings in rejecting the defendant's contentions. Our review of the record indicates that the trial court's conclusions were justified. Accordingly, we find it unnecessary to remand the cause for additional hearings on the defendant's post-trial motion.

■ The final issue the defendant raises is that the 15-year term of imprisonment imposed upon him is excessive and grossly disparate to the three-year sentence imposed upon codefendant Frank Van Dyke, who pled guilty to robbery.

We begin by noting that a trial judge's determination of a proper sentence will not be disturbed absent an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Further, when a codefendant receives a lighter sentence pursuant to a plea agreement, that sentence is no basis for a comparison. (*People v. King* (1988), 165 Ill. App. 3d 464, 518 N.E.2d 1309.) Additionally, we note that Van Dyke did not have the extensive criminal record that the defendant has. Finally, the defendant was identified as the perpetrator who used a knife to cut Mr. Hill. Accordingly, we find absolutely no merit to the defendant's contention that his sentencing was improper.

The judgment of the circuit court of Will County is affirmed.

Affirmed.

HAASE and SLATER, JJ., concur.