THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GERALD D'AREZZO, Defendant-Appellant.

Second District No. 2—90—1036

Opinion filed May 28, 1992.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, and Marilyn Martin, of Chicago, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Gerald D'Arezzo, defendant, pleaded guilty to the offense of first degree murder (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(2)) and was sentenced to a term of 42 years' imprisonment. He appeals from an order denying his motion to reconsider the sentence. For the following reasons, we affirm.

In the early morning hours of January 3, 1990, defendant accompanied Linda Morrison to her apartment in Lake Bluff, Illinois, having met in a tavern earlier that evening. After engaging in an act of sexual intercourse, defendant claims the victim became physically aggressive. When she persisted, defendant began to shove and push her away and proceeded to grab the victim around the neck and strangle her. Defendant collected his belongings, finding everything except his necktie, grabbed the victim's purse, and fled the premises through the bedroom window.

The following afternoon, the victim's roommate discovered her naked body facedown on the floor covered with a sheet and towel. Shortly after Lake County sheriff's officer Bertrand arrived at the

apartment, he discovered a sailor's tie monogrammed with the initials GJD on top of the body. He contacted the Navy, which provided him with a list of names, including that of defendant. The following day, defendant met with Lake County sheriff's detective Robert Randall. Defendant admitted the occurrence of the aforementioned events and stated that he believed the victim was dead when he fled her apartment. Thereafter, defendant pleaded guilty to the offense of first degree murder in that he knew his act of manual strangulation created a strong probability of death or great bodily harm. Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(2).

At the sentencing hearing, the State tendered victim impact statements (VIS) pursuant to section 6 of the Bill of Rights for Victims and Witnesses of Violent Crime Act (Act) (Ill. Rev. Stat. 1989, ch. 38, par. 1406) by the victim's parents and siblings (Ill. Rev. Stat. 1989, ch. 38, par. 1403(a)(3)). Although the defense objected on the basis that the statements contained improper opinions concerning defendant's lack of remorse, the judge admitted them, indicating his intent to read them in their entirety while mentally separating and disregarding any improper contents.

Later, Mildred Decosola, mother of the victim, testified that her presence at the hearings was most upsetting because she believed defendant showed no remorse for his actions. Specifically, she stated that during the hearings defendant "looked us straight in the eye" and "never once blinked an eye, never once put his head down." The defense again objected on the basis that the proper subject matter of a VIS does not concern the degree of remorse exhibited by defendant. In overruling the objection, the court reasoned that the statute was intended to encompass all "rippled effects" of the crime on persons identified as victims in the Act. In rendering a sentence of 42 years' imprisonment, the court expressly stated that it considered both the written and testimonial VIS.

On appeal, defendant contends that the court considered improper factors in sentencing. The weight attributed to each factor in aggravation and mitigation in setting a sentence depends on the particular circumstances of each case. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154; *People v. Hernandez* (1990), 204 Ill. App. 3d 732, 740.) The sentencing judge is in the best position to consider all factors relating to sentencing and is vested with wide discretion in making a reasoned judgment concerning the appropriate penalty. (*People v. O'Neal* (1988), 125 Ill. 2d 291, 297.) A reviewing court must examine the propriety of sentences with great caution, ensuring that it does not substitute its judgment for that of the sentencing court merely because it

would have weighed the factors differently. (*People v. Streit* (1991), 142 Ill. 2d 13, 19.) Thus, the trial court's balancing of aggravating and mitigating circumstances is entitled to substantial weight and deference and will not be disturbed on review absent an abuse of discretion. (*Streit*, 142 Ill. 2d at 18-19; *People v. Center* (1990), 198 Ill. App. 3d 1025, 1032.) The imposition of a sentence constitutes an abuse of discretion only when the judgment of the trial court is manifestly unjust or palpably erroneous. *People v. Anderson* (1986), 112 Ill. 2d 39, 46.

Defendant first contends that his sentencing hearing was tainted by the testimony and statement of the victim's mother, Mildred Decosola. Persons identified as victims in the Bill of Rights for Victims and Witnesses of Violent Crime Act, which includes the spouse, parent, child or sibling of a person killed as a result of a violent crime (Ill. Rev. Stat. 1989, ch. 38, par. 1403(a)(3)), are statutorily entitled to address the court "regarding the impact which the defendant's criminal conduct *** has had upon the victim[s]." (Ill. Rev. Stat. 1989, ch. 38, par. 1406.) The Act further provides that the court shall consider the victim impact statements, as well as all other appropriate factors in rendering the defendant's sentence.

Although the Act fails to address precisely what type of information is the proper subject matter of a VIS, the United States Supreme Court has recently addressed the admissibility of these statements. (*Payne v. Tennessee* (1991), 501 U.S. ___, 115 L. Ed. 2d 720, 111 S. Ct. 2597.) In *Payne*, the Supreme Court overruled its prior decisions in *Booth v. Maryland* (1987), 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529, and *South Carolina v. Gathers* (1989), 490 U.S. 805, 104 L. Ed. 2d 876, 109 S. Ct. 2207, and allowed evidence of the specific harm caused by the defendant to be introduced at the sentencing phase in a capital case "for the jury to assess meaningfully the defendant's moral culpability and blameworthiness." (*Payne*, 501 U.S. at ___, 115 L. Ed. 2d at 735, 111 S. Ct. at 2608.) *Payne* has recently been applied in Illinois in *People v. Hope* (1992) 147 Ill. 2d 315, 323. As stated in *Booth*, "there may be times that the victim's personal characteristics are relevant to rebut an argument offered by the defendant. [Citation.] The trial judge, of course, continues to have the primary responsibility for deciding when this information is sufficiently relevant to some legitimate consideration to be admissible, and when its probative value outweighs any prejudicial effect." *Booth*, 482 U.S. at 507 n.10, 96 L. Ed. 2d at 451 n.10, 107 S. Ct. at 2535 n.10.

■ Although defendant asserts that Mrs. Decosola's statements concerning the degree of remorse exhibited by defendant constituted

an inadmissible lay interpretation of his subjective mental process in violation of evidentiary rules, we find no error. The opinions concerning the degree of remorse exhibited by defendant were based on personal observations of defendant's demeanor in the courtroom. Because defendant claims he did exhibit remorse for the crime, the statements were directly relevant to assess defendant's moral culpability and blameworthiness (*Payne*, 501 U.S. at ____, 115 L. Ed. 2d at 735, 111 S. Ct. at 2608), and rebut his argument (*Booth*, 482 U.S. at 507 n.10, 96 L. Ed. 2d at 451 n.10, 107 S. Ct. at 2535 n.10).

We further find that the sentencing judge placed an appropriate degree of weight on the VIS. If these statements were before a jury rather than the judge, the court would have been required to sift through the statements and eliminate inflammatory material. However, the court explicitly stated that it intended to read through all the statements in their entirety and mentally separate and disregard improper contents. When rendering defendant's sentence, the court explained in great detail the many factors it considered in aggravation and mitigation. Only in passing did the court state that it considered the written and oral statements of the victims. We note that the range of sentencing in this case was far higher than defendant actually received. (See Ill. Rev. Stat. 1989, ch. 38, pars. 9—1, 1005—8—1, 1005—8—2.) Without evidence in the record to support defendant's contention that the court placed *undue* emphasis on the evidence concerning the degree of remorse exhibited by defendant, we find no abuse of discretion. See *People v. Trice* (1991), 217 Ill. App. 3d 967, 983.

Next, defendant asserts that the sentencing process was infected with improper speculation and conjecture concerning the degree of violence accompanying the murder, the amount of premeditation involved, and the impact of defendant's background and history. In rendering its sentence, the court stated that the victim was murdered:

"[B]y manual strangulation, choking her, which in the Court's opinion requires considerable deliberation, considerable continuous physical contact, and it takes a period of time to accomplish. It is not something which is done over the spur of the moment such as the instantaneous pulling of a trigger and firing a bullet into someone's body causing their death. This took a period of time. It took a concerted effort, thinking and thought.

There was further evidence from the factual basis supplied to the Court that this was a crime committed with some addi-

tional violence, [given] that there were contusions and abrasions to the head, breasts, clavicle and shoulder of the victim."
Defendant contends that the State failed to produce any evidence indicating a causal connection between the bruises on the victim's body and her strangulation by defendant, thus making the court's assertion that the murder was accompanied by "additional violence" nothing more than unfounded speculation. He further asserts that the judge's postulation that the crime was premeditated exceeded reasonable bounds of facts tending to aggravate the offense. We disagree.

 The record contains evidence that Dr. Lawrence Blum performed an autopsy on the victim. His report revealed two contusions on the victim's head, one of which was approximately 1½ inches in length and one inch wide, and additional contusions to the left breast, clavicle, and shoulder. It is not speculation that an act of manual strangulation resulting in murder requires intense physical contact over a considerable time and is likely to cause bruising. "The fact that the sentencing judge added some personal observations before imposing sentence, while not to be encouraged, is of no consequence." (*People v. Steppan* (1985), 105 Ill. 2d 310, 323.) The existence of those injuries is physical evidence from which reasonable inferences were properly drawn. The degree of harm or force employed, as well as the physical manner in which a victim's death occurred, may be considered as aggravating factors in determining the length of a sentence in cases where serious bodily harm is arguably implicit in the offense for which a defendant is convicted. (See *People v. Saldivar* (1986), 113 Ill. 2d 256, 271; *People v. Bolden* (1991), 210 Ill. App. 3d 940, 947; Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(a)(1).) Without any indication that the court placed undue emphasis on the manner in which the victim's death occurred in aggravation, we find no abuse of discretion.

Defendant contends that his sentence should be reduced because the court gave insufficient consideration to his rehabilitative potential. The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, §11.) Similarly, section 1—1—2 of the Unified Code of Corrections states that the purposes of the Act are to "prescribe sanctions proportionate to the seriousness of the offenses and permit the recognition of differences in rehabilitation possibilities among individual offenders" and "restore offenders to useful citizenship." (Ill. Rev. Stat. 1989, ch. 38, pars. 1001—1—2(a), (d).) However, the constitutional mandate calls for balancing of the retributive and rehabilitative aspects of punishment. (*People v. Young* (1988), 124 Ill. 2d 147,

156.) Therefore, the record must show that the court gave due consideration to both elements. (*People v. Thomas* (1991), 217 Ill. App. 3d 698, 705; *People v. Jenkins* (1991), 209 Ill. App. 3d 249, 264.) Before a reviewing court reduces a sentence pursuant to Supreme Court Rule 615(b) (134 Ill. 2d R. 615(b)), it must find that the sentencing court abused its discretion, in that the punishment clearly departs from the spirit and purpose of fundamental law and the State Constitution, which requires that the sentence be proportionate to the nature of the offense and the possibilities of rehabilitation. *People v. Haepp* (1990), 194 Ill. App. 3d 207, 210.

■ In sentencing defendant, the judge expressly stated that he considered all evidence presented at the hearing, as well as the presentence report and defendant's personal statement. However, the court also rendered a lengthy statement where it professed its belief that defendant committed the murder without a strong provocation. Based on the testimony of Dr. Marva P. Dawkins, a clinical psychologist who examined defendant, as well as letters from persons who knew defendant, the court believed defendant is "too volatile a person to remain in liberty in an unsuspecting society" and was "convinced" that defendant's character and attitude indicate a likelihood of committing another offense when faced with similar circumstances. The court referred to defendant's unfortunate upbringing, but noted that defendant's own sister was leading a productive life, stating that "not everyone who comes from a broken home or bad parents or similar upbringing goes on to commit murder, much less other criminal offenses." Although the court found defendant "highly intelligent, highly articulate, [with] excellent recall, [and] excellent memory," it considered his credibility suspect.

In urging a reduction of his sentence, defendant refers to cases where sentences were reduced by the court in situations where the defendant's background was similar to his own. However, the sentencing judge has an opportunity to observe the defendant in person and is in the best position to assess his credibility, demeanor, general moral character, and mentality (*Streit*, 142 Ill. 2d at 19), with proper consideration to his prior criminal history, rehabilitative potential, seriousness of the offense, and the need to protect society and deter others. (*People v. Smith* (1991), 214 Ill. App. 3d 327, 338-39.) Therefore, the sentencing judge is in the best position to fashion a sentence which balances the rehabilitative and retributive elements. Further, the existence of mitigating factors does not automatically oblige the court to reduce a sentence. Where there is evidence in mitigation before the court, it is presumed to have considered such evidence absent

some contrary indication other than the sentence imposed. (*Thomas*, 217 Ill. App. 3d at 705; *Smith*, 214 Ill. App. 3d at 339.) We find no abuse of discretion in the present case, since the record adequately reflects that the court gave appropriate weight to *all* evidence concerning defendant's rehabilitative potential, both positive and negative, when imposing a sentence of 42 years' imprisonment, which is well below the maximum possible penalty for this offense. See Ill. Rev. Stat. 1989, ch. 38, pars. 9—1, 1005—8—1, 1005—8—2.

Lastly, defendant contends that he was denied the effective assistance of counsel. A defendant claiming ineffective assistance of counsel must meet a two-part test articulated in *Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064, and adopted in Illinois in *People v. Albanese* (1984), 104 Ill. 2d 504, 526. The first prong requires a showing that counsel's performance fell outside the range of competence demanded of attorneys in criminal cases. Next, defendant must establish that counsel's deficient performance prejudiced his defense to the extent that he was denied a fair trial. (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) This prong requires a showing that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*People v. Horton* (1991), 143 Ill. 2d 11, 23.) Claims of ineffectiveness may be disposed of on the ground that the defendant suffered no prejudice from the claimed errors, without deciding whether the errors were serious enough to constitute less than reasonably effective assistance. *People v. Pecoraro* (1991), 144 Ill. 2d 1, 13; *People v. Jones* (1991), 144 Ill. 2d 242, 253.

In this case, defendant asserts that he suffered prejudice because his attorneys allowed the sentencing hearing to proceed without obtaining certain reports concerning defendant's background and history. In order to sustain his burden of proving ineffective assistance of counsel, defendant must not only show that the documents would have been helpful to his defense, but also that they contained evidence which was not previously placed before the sentencing court. However, the record reflects that a lengthy history of defendant's background was presented to the sentencing court through the *un*contradicted testimony of defendant and his sister, through the presentence report, and the testimony of the psychologist who examined defendant, all of which was supported by letters from various persons from defendant's past. Without the omitted documents incorporated into the record, we cannot assess the degree of impact they might have had at sentencing, if any. Therefore, we find that defendant has failed

to sustain his burden of proving the omission of the documents prejudiced his defense such that he was denied a fair sentencing hearing.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

WOODWARD and DUNN, JJ., concur.