THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
OMAR SAUNDERS, Defendant-Appellant.

First District (3rd Division) No. 1—88—2178

Opinion filed September 30, 1992.—Rehearing denied October 30, 1992.

Michael J. Pelletier and Janice Lynn Triptow, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Paul Gliatta, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Following a jury trial, defendant Omar Saunders was found guilty of murder, armed robbery, aggravated kidnapping and two counts of aggravated criminal sexual assault. (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(2), (a)(3), 12—14(a)(2), 18—2(a), 10—2(a)(3).) Saunders was sentenced to natural life imprisonment for murder with additional terms of 30 years for aggravated criminal sexual assault, 30 years for armed robbery and 15 years for aggravated kidnapping. These additional terms were to run concurrent with the natural life imprisonment term. Defendant argues on appeal that: (1) his right to a fair trial was prejudiced by the State's implication in closing argument that he was involved in the intimidation of a nontestifying witness, Herman Mollison; (2) his sixth amendment right to confrontation was violated where the State elicited the fact that he was sought by the police after being implicated by the pretrial statements of his code-fendants; (3) the trial court erred by admitting into evidence the testimony of Pamela Fish establishing that he, along with 37% of the general population, could have deposited the semen found on the victim's vaginal swab; (4) he was deprived of a fair trial by improper prosecutorial remarks in closing argument concerning certain physical evidence in the case; and (5) the sentence of natural life imprisonment without parole for the murder charge was an abuse of the trial court's discretion.

Lori Roscetti was a medical student who was found dead alongside her car on an isolated railway access road located on Chicago's west side. The defendant, Saunders, was indicted for the murder and rape of Roscetti along with three other defendants. The defendant

made a motion for severance from the other defendants, which was granted.

At trial, the defendant filed a motion *in limine* to prevent the State from presenting testimony of the codefendants' pretrial statements or evidence of their involvement in the investigation. The trial court ruled the State could go into the investigative process relative to why the police were seeking the defendant but could not go into the actual statement of the codefendants. The jury was given a limiting instruction to this effect.

Testimony began with the State calling the victim's mother, Laura Roscetti. She testified that she learned of her daughter's death from her husband on October 18, 1986. The State also called the victim's roommate, Christine Gorman, to testify about the victim's activities the day of the murder. The State called a classmate of the victim, Allan Radner, with whom she had been studying the night she was killed.

Samuel Busch testified on behalf of the State. Busch was a friend of one of the other defendants in the case, Marcellius Bradford. Busch was also acquainted with the other codefendants in the case, Calvin and Larry Ollins, who are cousins, as well as Saunders. Busch usually saw the defendant at the ABLA housing projects in the City of Chicago. On one occasion, while Busch was helping another ABLA resident, Herman Mollison, paint his apartment, he saw Saunders coming up the stairs. Busch invited Saunders to "smoke a joint." During this encounter, Busch told Saunders the police were looking for him. Saunders replied he did not know why because he did not do anything. Saunders then told Busch that one evening while they were waiting for a bus, he and Bradford encountered Calvin and Larry Ollins. Since the busses apparently had stopped running, the quartet began walking. Suddenly, Larry Ollins made a "Rambo" move on a car driven by a young woman. Larry Ollins then jumped into the driver's seat of the car, followed by Calvin Ollins. The Ollinses then called to Saunders and Bradford to join them in the car. Bradford and Saunders got into the back seat of the car. The Ollinses started molesting the woman. Larry Ollins then stopped the car and told Bradford and Saunders to get out. Saunders and Bradford began walking when Larry Ollins told them to wait a minute. Larry Ollins said he was "going to make this woman pay." At this point, Saunders said the woman tried to run away but was hit in the face with a piece of brick by Larry Ollins. Saunders told Busch that this is the point at which he and Bradford left the scene of the crime.

Busch became further instrumental in solving the Roscetti murder by cooperating with Detective Jones of the Chicago police department. Busch spoke with Jones on February 26, 1987. Busch was acquainted with Jones because Jones was helping Busch with an aggravated battery case in which Busch was the victim. Busch told Jones he had information about the Roscetti murder. Pursuant to his conversation with Jones about the Roscetti case, Busch spoke with Detective Mercurio of the Chicago police department on March 31, 1987.

On March 31, 1987, Busch gave a statement to the police regarding the Roscetti murder. At this time, Busch was not aware that another individual, Herman Mollison, had given statements about the Roscetti murder.

Approximately one year after Busch had spoken to Jones regarding the Roscetti murder, he spoke to counsel for the defendant, Tom Allen. The conversation between Allen and Busch was recorded. In that conversation, Busch told Allen everything he had told the authorities was lies. Later, Busch said the statements he made to the police and to the grand jury were honest and truthful.

Busch admitted during his redirect examination at trial he was aware that Herman Mollison had been threatened in connection with this case. By telling defense counsel he never made a statement implicating Saunders in the Roscetti murder, Busch rationalized that the information would get back to Saunders and protect him from any intimidation attempts.

The State called Mercurio to testify at trial. Mercurio was instrumental in assembling a list of approximately 100 possible suspects in the Roscetti case. From that list Mercurio subsequently interviewed Calvin and Larry Ollins as well as Bradford. Saunders' name surfaced as a result of those interviews. February 12, 1987, Saunders turned himself into the third district police station. He was later transferred to the Area 4 station. At this time, Saunders was interviewed by Mercurio. During this interview, Mercurio told Saunders that the police had established that only he and Calvin Ollins had assaulted the victim on the front seat of the car. Mercurio then asked Saunders how long Calvin Ollins assaulted the victim, to which Saunders replied "a couple of minutes." Mercurio then asked Saunders whether or not he understood that hairs found on the front seat of the car belonged to either him or Calvin Ollins. Saunders replied: "Yes, I realize that."

The State presented the testimony of Pamela Fish. Fish is a qualified serology expert employed by the Chicago police department in the serology unit of the crime laboratory. Fish testified as to the results of certain tests she had performed in connection with the Ros-

cetti case. Specifically, she tested blood, saliva, and semen samples taken from the scene of the crime. As to the semen samples, Fish testified the results could only exclude possible donors but could not positively establish the identity of the donors. Saunders was excluded as a possible semen donor based on the characteristics of his PGM or enzyme markers, which did not match those taken from the victim. The PGM markers found in the sample taken from the victim did, however, match those of Calvin and Larry Ollins. The State submitted a motion *in limine* to exclude the cross-examination of Fish regarding DNA testing. No DNA testing was conducted in this case, nor was the procedure commonly available at this time. The motion was granted. Defense counsel moved to strike the entirety of Fish's testimony because it exonerated the defendant of rape. The trial court denied defendant's motion because it reasoned the evidence corroborated Saunders' statement that Calvin Ollins had sex with the victim. Saunders' statement conclusively established his presence at the scene of the crime, which in turn corroborated Busch's testimony.

Gary Huff, an ABLA resident, testified for the State. Huff was a friend of defendant Bradford. He was also acquainted with Saunders. At the time of the trial, Huff had a charge of witness intimidation pending against him with regard to Mollison. Huff testified that on October 17, 1986, during a party in the ABLA projects, he saw Larry Ollins and Saunders arrive together at approximately 8 p.m. and then leave the party together at approximately 10 p.m. Later that same evening, at approximately 2 a.m., Huff again saw Saunders in the lobby of an ABLA project building. Huff further testified that in January of 1987, he and Saunders were in Bradford's apartment watching television when they saw Bradford in handcuffs on the screen. At this time, Saunders told Huff that "they might come looking for me next *** I killed a lady on the tracks."

■ The defendant raises numerous issues before this court. Initially, defendant argues that his right to a fair trial was prejudiced by remarks the State made during the trial. While defense counsel argues that portions of Busch's testimony were properly admitted into evidence solely for the purpose of showing his state of mind at the time he made a prior inconsistent statement, defense counsel also argues that this proper admission of testimony into evidence was prejudicial to his client. We disagree. The prior inconsistent statement arose because on direct examination, Busch told the police about Saunders' earlier statement to him concerning Saunders' involvement in the Roscetti murder. However, Busch later told defense counsel, in a taped conversation on February 15, 1988, that Saunders never ad-

mitted his involvement in the crime. On redirect, Busch's testimony as to *why* he made the statement to defense counsel was ruled admissible by the trial court to rehabilitate his testimony on direct examination. The State further argues that the introduction of Busch's prior inconsistent conversation with defense counsel left the jury with the impression that the police had coerced Busch into testifying against the defendant. To rebut this inference, we find the State properly admitted into evidence Busch's knowledge of the intimidation of another witness, Mollison, to counter inferences of police coercion.

 Defense counsel next argues that it was improper to elicit testimony at trial from Huff that he was charged with the intimidation of Mollison. The State replies that the defendant did not raise this issue in his motion for a new trial. Therefore, the State contends the issue has not been properly preserved for review. We agree that this issue is waived under the holding in *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

 Defendant further argues that he was deprived of his right to a fair trial because the State improperly elicited his implication in the Roscetti crime through pretrial statements of his codefendants. By the defendant raising this issue on appeal without proper preservation, the trial court had no opportunity to correct the error the defendant alleges. Thus, the very protection afforded in the waiver rule was extinguished.

Defendant relies on *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, which held that a nontestifying codefendant's confession cannot be elicited for the purpose of implicating the defendant. To allow such testimony would deny the defendant's sixth amendment right to confrontation of his accusing witnesses. Case law decisions have been divided since the ruling in *Bruton* as to whether or not a defendant's rights are violated based on the admission of the fact that he was arrested following the interrogation of a codefendant. This court has interpreted the ruling in *Bruton* in *People v. Rivera* (1986), 145 Ill. App. 3d 609, 495 N.E.2d 1088. In *Rivera*, the court determined the pivotal question to be decided was whether or not the substance of a codefendant's statement was placed before the jury. The court held it was not; thus, the defendant's right to confrontation was not compromised.

In the case *sub judice*, the defendant contends the testimony of Detective Mercurio and State's Attorney Sussman prejudiced his sixth amendment right to confrontation because of the fact that, after speaking to the codefendants, he became a suspect and was then arrested. However, we find that, under the ruling in *Rivera*, the testi-

mony of Mercurio and Sussman were admissible facts of the investigatory process.

■ Defendant next argues the testimony of Pamela Fish of the serology unit of the Chicago police department was prejudicial and improperly admitted into evidence. Fish's testimony established that defendant's semen sample was consistent with the genetic markers of his codefendants. However, the State pointed out that while the semen samples placed all of the codefendants in a large population of possible donors that could have included Omar Saunders, the genetic blood markers actually *excluded* the defendant from the group of possible donors. The evidence was properly admitted because of its corroborative value in establishing the defendant's presence at the scene of the crime.

The relevance of evidence is a question for the trial court which should not be disturbed absent an abuse of discretion. (*People v. Ward* (1984), 101 Ill. 2d 443, 463 N.E.2d 696.) In Illinois, a person will be held legally accountable when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1987, ch. 38, par. 5—2(c).) Active participation in a crime may be "established through a person's knowledge and participation in a criminal scheme, even though there is no evidence of his *direct* participation in the criminal act." (Emphasis added.) *People v. Dotson* (1986), 143 Ill. App. 3d 135, 142, 492 N.E.2d 903.

The paramount issue in the trial of the defendant is whether or not he is guilty of the kidnapping, rape, and murder of the victim. We find that the testimony of Fish, thus, is unquestionably relevant in evaluating the culpability of the defendant based on a theory of accountability. Fish's testimony is corroborative of the defendant's own admission that he was present when Calvin Ollins raped Lori Roscetti, even though the semen samples taken from the victim excluded the defendant.

Defense counsel relied on *People v. Charleston* (1985), 132 Ill. App. 3d 769, 477 N.E.2d 762, to support the contention that wide latitude should be granted in cross-examination of an expert witness. The State replied that the subject of DNA testing is completely irrelevant to the case. In response, defense counsel further argued that cross-examination of Fish *vis-a-vis* DNA testing would have been instrumental in discrediting her testimony. We find defense counsel's argument to be unsupportive of any error on the part of the trial court.

■ We are next asked to examine the defendant's contention that the prosecution made prejudicial comments in closing argument which overstated the physical evidence introduced during trial. The defendant did not raise objections to the specific prosecutorial comments at trial or in his post-trial motion. Even improper comments do not constitute reversible error unless they result in substantial prejudice to the accused, such that absent those remarks the verdict would have been different. (*People v. Cisewski* (1987), 118 Ill. 2d 163, 175, 514 N.E.2d 970.) Accordingly, we find that the defendant has not properly preserved the complained-of prosecutorial comments for review and this court will not consider them on appeal.

■ Defendant's final issue on appeal is whether his sentences were excessive and constituted an abuse of discretion by the trial court. An examination of the facts of the case indicates the sentences were within the statutory guidelines and do not constitute an abuse of discretion by the trial court. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b)(2).) The trial court considered both the extremely brutal and heinous nature of the offense as well as factors both in mitigation and aggravation in determining the appropriate sentence for the defendant. The acts of the defendant can only be characterized as senseless, wanton cruelty, bordering on acts similar to an animal ravaging its helpless prey.

A sentence may not be altered upon review absent an abuse of discretion by the trial court. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.) The trial court must strike a balance between the protection of society and rehabilitation of the offender based on many factors. (*People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541.) A court of review may not substitute its judgment for that of the trial court because it would have balanced the appropriate factors differently.

The record indicates the court considered arguments in both aggravation and mitigation, the defendant's age at the time the crime was committed, his prior criminal record and social environment. Thus, we hold the trial court did not abuse its discretion in sentencing the defendant to life imprisonment without parole.

For all of the foregoing reasons, we hereby affirm the decision of the Cook County circuit court in all respects.

Affirmed.

GREIMAN, P.J., and RIZZI, J., concur.