THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FREDDY REYNA, Defendant-Appellant.

Third District    No. 3—96—0779

Opinion filed July 8, 1997.

Roy A. Sabuco and Alexander H. Beck, both of Snyder, Sabuco, Aeschliman & Washburn, P.C., of Joliet, for appellant.

James Glasgow, State's Attorney, of Joliet (John X. Breslin and J. Paul Hoffmann, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCUSKEY delivered the opinion of the court:

The defendant, Freddy Reyna, was tried *in absentia.* Following a joint jury trial he was convicted of robbery (720 ILCS 5/18—1 (West 1994)) and aggravated battery (720 ILCS 5/12—4(b)(8) (West 1994)). He was sentenced *in absentia* to 28 years' imprisonment.

The defendant appeals, arguing: (1) he is entitled to a new trial because his failure to appear at his original trial was not willful; (2) that prosecutorial misconduct denied him a fair trial; (3) that the trial court improperly considered victim impact statements prepared

by the victim's parents; and (4) his sentence was excessive and disparate to those of his codefendants. For reasons that follow, we affirm the defendant's convictions and sentence.

## FACTS

The record reveals that the defendant was released on bond following his arrest. He failed to appear on the morning of his trial, and the cause was continued until the afternoon. That afternoon, the State presented evidence the defendant was willfully avoiding trial. After hearing the evidence, the trial court concluded the State met the statutory burden (see 725 ILCS 5/115—4.1 (West 1994)) and ordered the defendant to be tried *in absentia.*

At the defendant's trial, it was established that, on the night of September 13, 1995, the victim, Lee Vinsel, was walking in Joliet. He was approached by the defendant, who asked Vinsel if he belonged to a street gang. When Vinsel said he was not in a gang, the defendant grabbed Vinsel's hat and Walkman cassette player. The defendant then handed the hat and cassette player to codefendant Johnathan Erickson. Vinsel started to walk away, but he was grabbed from behind by the defendant and pulled down. The defendant kicked Vinsel once. The defendant and Erickson then started punching Vinsel. Codefendant Jose Perez and another man came out of a nearby building and joined the attack. Eventually, Vinsel managed to flee and call the police. The police ultimately returned to the scene of the attack, accompanied by Vinsel. Shortly thereafter, the defendant, Erickson, and Perez were identified by Vinsel and arrested.

Following arguments by counsel, the jury found the defendant guilty of robbery and aggravated battery. The defendant was sentenced *in absentia* to 28 years' imprisonment. Several days later, the defendant was apprehended by the police. The defendant subsequently filed a motion to reconsider (see 725 ILCS 5/115—4.1(e) (West 1994)). The motion alleged, among other things, that he was absent from trial because of threats made against him by codefendants Erickson and Perez.

An evidentiary hearing was held on the defendant's motion to reconsider. At the hearing, the defendant's brother-in-law testified he had been told by Erickson and Perez that the defendant would get "his ass whipped" if he went to court. The defendant's brother-in-law further testified that when he told the defendant of these threats, the defendant became scared and moved to another neighborhood in Joliet. The defendant's wife and sister-in-law also testified they had been told of the threats. The trial court denied the defendant's motion to reconsider. The court found the defendant acted willfully in

failing to appear. The court further noted that the defendant never contacted his counsel. Finally, the court concluded: "There is no question that—whether he was in the area and hiding, or whatever, that he still had the opportunity to appear at trial." The defendant subsequently filed this appeal.

## ANALYSIS

### Trial *in absentia*

The defendant initially claims he is entitled to a new trial because his failure to appear for trial and sentencing was not willful. The defendant argues that the only reason he failed to appear for his trial was because of threats from his codefendants.

■ A defendant who is tried and sentenced *in absentia* is entitled to a new proceeding if he establishes that his failure to appear was both not his fault and caused by circumstances beyond his control. *People v. Hayes*, 159 Ill. App. 3d 1048, 1051, 513 N.E.2d 68, 70-71 (1987); 725 ILCS 5/115—4.1(e) (West 1994). The trial court's denial of a new trial to a defendant convicted *in absentia* will not be reversed unless a manifest abuse of discretion is shown. *People v. Bushey*, 170 Ill. App. 3d 285, 289, 524 N.E.2d 738, 741 (1988).

■ Here, although there was testimony that the codefendants threatened the defendant, there was *no* direct testimony that those threats were the reason the defendant failed to appear. The trial court was not required to infer that the defendant's failure to appear was linked to these threats. See *People v. Klovstad*, 168 Ill. App. 3d 444, 448, 522 N.E.2d 803, 806 (1988) (holding that the trial court was entitled to disbelieve the defendant's explanation for his absence). Moreover, even if the defendant's failure to appear was because of the threats, the trial court was not required to conclude that the threats constituted sufficient cause allowing the defendant to be absent from trial. *People v. Devoe*, 163 Ill. App. 3d 855, 858, 516 N.E.2d 1017, 1019 (1987) (no new proceedings required despite testimony that defendant's absence was a justified attempt to avoid threats to his life). Thus, we cannot say that the trial court erred in concluding that the defendant was not entitled to a new trial.

### Prosecutorial Misconduct

The defendant next claims that he was denied a fair trial because of prosecutorial misconduct. Specifically, the defendant argues: (1) the prosecutor presented improper identification testimony; and (2) during closing arguments, the prosecutor improperly commented on the defendant's failure to appear.

### *Identification Testimony*

It is clear from the record that the prosecutor experienced some

difficulty when asking the victim to identify the defendant and the codefendants in photographs. During that line of questioning, defense counsel objected to: (1) the leading nature of the prosecutor's questioning; (2) the lack of foundation; and (3) the fact the photographs had not been shown to defense counsel before they were used to question the victim.

■ In order for prosecutorial misconduct to warrant reversal, the behavior must be particularly egregious and constitute a material factor in the defendant's conviction. *People v. Johnson*, 264 Ill. App. 3d 1000, 1011, 637 N.E.2d 767, 774 (1994). Prosecutorial misconduct may occur when the State ignores a trial court's ruling and continues the line of questioning ruled on by the court. *People v. Hobbs*, 232 Ill. App. 3d 63, 71, 596 N.E.2d 772, 777 (1992).

■ Here, based upon our review of the entire record, we find no error. Although defense counsel's objections were valid, we do not believe the prosecutor was engaging in gamesmanship in an effort to present improper identification testimony. More importantly, it does not appear that the defendant suffered any prejudice as a result of the prosecutor's questioning. We note that, after defense counsel objected, the trial court acknowledged the objection and the prosecutor immediately apologized for not previously showing the photographs to defense counsel. The prosecutor then tendered the photographs to defense counsel, stopped using leading questions, and laid an adequate foundation for the photographs. Under these circumstances, we are unwilling to say that the prosecutor engaged in misconduct that would justify a new trial.

## Closing Arguments

■ The defendant next claims that prosecutorial misconduct occurred during closing arguments. The defendant argues that the prosecutor improperly suggested that the defendant had an obligation to testify and prove his innocence. In support of this claim, the defendant points to the following prosecutorial comments:

> "I'm not going to go all over the testimony with you. You were here. You heard it. You saw the witnesses. You saw their demeanors when they testified. You saw [codefendant Perez] when he testified. You heard the pauses between the questions. You heard—you saw—you saw [Perez'] demeanor. I don't think there is anything else that needs to be said on that. *Mr. Reyna? Mr. Reyna is not even here. He never even bothered to show up for his own trial.* I think the People have proved their case beyond a reasonable doubt and I ask you to find the defendants guilty." (Emphasis added.)

Prosecutorial comments that imply that the defendant had to

840

show his innocence are improper. *People v. Tyson*, 137 Ill. App. 3d 912, 921, 485 Ill. App. 3d 523, 530 (1985); *People v. Giangrande*, 101 Ill. App. 3d 397, 402, 428 N.E.2d 503, 508 (1981). The State is barred from misstating the law or making remarks that diminish its burden of proof. *People v. Buckley*, 282 Ill. App. 3d 81, 89, 668 N.E.2d 1082, 1088 (1996).

Here, after carefully reviewing the above-noted comments, we believe the prosecutor did not improperly suggest that the defendant had to testify and prove his innocence. Rather, we find the prosecutor's comment to be a brief and permissible reference to the defendant's absence from trial. See *People v. Ocasio*, 205 Ill. App. 3d 157, 162, 562 N.E.2d 549, 552 (1990); but see *People v. Slaughter*, 84 Ill. App. 3d 88, 96, 404 N.E.2d 1058, 1065 (1980).

Moreover, even if the State's closing argument is construed as suggesting that the defendant had an obligation to testify and prove his innocence, we believe any error would have been cured by the exacting jury instructions given in this case. See *People v. Lawler*, 142 Ill. 2d 548, 564-65, 568 N.E.2d 895, 902-03 (1991). Those instructions unequivocally stated that: (1) the defendant was presumed innocent; (2) the State had the burden of proving the defendant guilty beyond a reasonable doubt; (3) the defendant was not required to prove his innocence; and (4) the defendant's failure to testify must not be considered in arriving at a verdict. Under these circumstances, we are unable to say that the prosecutor's comments constituted reversible error.

### Victim Impact Statement

■ The defendant next claims that at sentencing the trial court improperly considered victim impact statements prepared by the victim's parents. The defendant argues that the statements should not have been considered because they were irrelevant and prejudicial.

It is well established that the foreseeable consequences of a defendant's actions on a victim and his family are relevant considerations in sentencing. *People v. Pavlovskis*, 229 Ill. App. 3d 776, 782, 595 N.E.2d 587, 591 (1992). Therefore, the trial court could consider a statement from the parents addressing the result of the defendant's conduct. Moreover, even if any portion of the victim impact statements addressed irrelevant matter, the trial judge expressly noted that he would give the statements only the consideration that they were due. See *People v. D'Arezzo*, 229 Ill. App. 3d 428, 432, 593 N.E.2d 1076, 1080 (1992) (rejecting claim that sentencing judge placed too much emphasis on parents' victim impact statements when judge

stated he would disregard improper contents). Under these circumstances, we find no error.

## Excessive Sentence

■ The defendant next argues that the 28-year sentence imposed by the trial court was excessive.

Matters of sentencing are committed to the discretion of the trial court and are entitled to great weight and deference on appeal. *People v. Perruquet*, 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884 (1977). In imposing sentence, the court may consider the defendant's criminal record. 730 ILCS 5/5—5—3.2(a)(3) (West 1994). Additionally, a court of review may not substitute its judgment for that of the trial judge simply because it might have balanced the appropriate factors differently. *People v. Saunders*, 236 Ill. App. 3d 305, 312, 603 N.E.2d 32, 37 (1992).

Here, the defendant was sentenced as a Class X offender because of his prior felony convictions. 730 ILCS 5/5—5—3(c)(8) (West 1994). Thus, he was eligible for between 6 and 30 years of imprisonment. 730 ILCS 5/5—8—1(a)(3) (West 1994). The defendant was sentenced within the statutory range. The record shows that the trial court properly considered all the evidence in aggravation and mitigation and concluded that a 28-year sentence was appropriate. After carefully reviewing the record, we see no reason to disturb the trial court's judgment.

## Disparate Sentence

■ The defendant's final argument is that his 28-year sentence was disparate to those of his codefendants, Erickson and Perez. The defendant notes that Erickson was sentenced to probation and Perez was sentenced to three years' imprisonment.

Similarly situated defendants should not receive grossly disparate sentences. *People v. Foster*, 199 Ill. App. 3d 372, 393, 556 N.E.2d 1289, 1303 (1990). However, parity in sentencing is not required for all participants in the same criminal activity. *Foster*, 199 Ill. App. 3d at 393, 556 N.E.2d at 1303. The difference may be justified by the relative character and history of the codefendants, the degree of culpability, rehabilitative potential, or a more serious criminal record. *Foster*, 199 Ill. App. 3d at 393, 556 N.E.2d at 1303.

Here, the record shows that Erickson's sentence was the product of a guilty plea. Therefore, it does not provide a suitable basis for comparison with the sentences of his codefendants who went to trial. See *People v. Michaels*, 233 Ill. App. 3d 911, 916, 599 N.E.2d 1, 4 (1992). Moreover, unlike Erickson and Perez, the defendant: (1) had prior adult felony convictions; (2) was subject to sentencing as a Class X offender because of his prior convictions; (3) failed to appear for

trial or sentencing; and (4) instigated the robbery and attack. Thus, the defendant was not similarly situated with his codefendants and his disparate sentence argument must fail.

## CONCLUSION

For the reasons stated, the judgment of the circuit court of Will County is affirmed.

Affirmed.

LYTTON, P.J., and HOLDRIDGE, J., concur.