No. 3--96--0779

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 1997

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of the 12th Judicial Circuit,

 ) Will County, Illinois

Plaintiff-Appellee, ) 

 )

v. ) No. 95--CF--5343

 ) 

FREDDY REYNA,                   ) Honorable

                                ) Stephen D. White,

Defendant-Appellant. ) Judge Presiding

_________________________________________________________________

JUSTICE McCUSKEY delivered the opinion of the court:

_________________________________________________________________

The defendant, Freddy Reyna, was tried 
in
 
absentia
.  Follow­ing a joint jury trial
 he was con­victed of robbery (720 ILCS 5/18--1 (West 1994)) and aggra­vat­ed bat­tery (720 ILCS 5/12--4(b)(8) (West 1994)).  He was sen­tenced 
in
 
absentia
 to 28 years' imprison­ment. 

The defen­dant appeals, arguing: (1) he is entitled to a new trial because his failure to appear at his origi­nal trial was not willful; (2) that prosecu­torial misconduct denied him a fair trial; (3) that the trial court improperly consid­ered victim impact statements prepared by the victim's parents; and (4) his sen­tence was exces­sive and dispa­rate to that of his co-defendants.  For reasons which follow, we affirm the defendant's convictions and sentence.

FACTS

The record reveals that the defendant was released on bond following his arrest.  He failed to appear on the morning of his trial, and the cause was continued until the afternoon.  That after­noon, the State pre­sented evidence the defendant was will­fully avoiding trial.  After hearing the evi­dence, the trial court conclud­ed the State met the statutory burden (see 725 ILCS 5/115--4.1 (West 1994)) and ordered the defendant to be tried 
in
 
absen­tia
.

At the defendant's trial, it was established that on the night of September 13, 1995, the victim, Lee Vinsel, was walking in Joliet.  He was approached by the defendant, who asked Vinsel if he belonged to a street gang.  When Vinsel said he was not in a gang, the defendant grabbed Vinsel's hat and Walkman cas­sette player.  The defendant then handed the hat and cassette player to co-defendant Johnathan Erickson.  Vinsel started to walk away, but he was grabbed from behind by the defendant and pulled down.  The defendant kicked Vinsel once.  The defen­dant and Erickson then started punching Vinsel.  Co-defendant Jose Perez and another man came out of a nearby building and joined the attack.  Eventually, Vinsel managed to flee and call the police.  The police ultimately returned to the scene of the attack, accompanied by Vinsel.  Shortly thereafter, the defendant, Erickson, and Perez were identified by Vinsel and arrest­ed.

Following arguments by counsel, the jury found the defendant guilty of robbery and aggravated battery.  The defendant was sentenced 
in
 
absentia
 to 28 years' imprisonment.  Several days later, the defen­dant was apprehended by the police.  The defen­dant subsequently filed a motion to recon­sider (see 725 ILCS 5/115--4.1(e) (West 1994)).  The motion al­leged, among other things, that he was absent from trial because of threats made against him by co-defendants Erickson and Perez.  

An evidentiary hearing was held on the defendant's motion to reconsider.  At the hearing, the defendant's broth­er-in-law testified he had been told by Erickson and Perez that the defen­dant would get "his ass whipped" if he went to court.  The defendant's brother-in-law further testified that when he told the defendant of these threats, the defendant became scared and moved to another neigh­borhood in Joliet.  The defendant's wife and sister-in-law also testified they had been told of the threats.  The trial court denied the defendant's motion to reconsider.  The court found the defen­dant acted willfully in failing to appear.  The court further noted that the defen­dant never con­tact­ed his counsel.  Finally, the court concluded: "There is no ques­tion that--whether he was in the area and hiding, or whatever, that he still had the opportu­nity to appear at trial."  The defendant subsequently filed this appeal.

ANALYSIS

Trial 
in
 
absentia

The defendant initially claims he is entitled to a new trial because his failure to appear for trial and sentencing was not will­ful.  The defendant argues that the only reason he failed to appear for his trial was because of threats from his co-defendants. 

 A defendant who is tried and sentenced 
in
 
absentia
 is entitled to a new proceeding if he establishes that his failure to appear was both not his fault and caused by circumstances beyond his control.  
People v. Hayes
, 159 Ill. App. 3d 1048, 1051, 513 N.E.2d 68, 70-71 (1987); 725 ILCS 5/115--4.1(e) (West 1994).  
The trial court's denial of a new trial to a defendant convicted 
in
 
absentia
 will not be reversed unless a manifest abuse of discretion is shown.  
People v. Bushey
, 170 Ill. App. 3d 285, 289, 524 N.E.2d 738, 741 (1988).

Here, although there was testimony that the co-defendants threatened the defendant, there was 
no
 direct testimony that those threats were the reason the defendant failed to appear.  The trial court was not required to infer that the defendant's failure to appear was linked to these threats.  See 
People v. Klovstad
, 168 Ill. App. 3d 444, 448, 522 N.E.2d 803, 806 (1988) (holding that the trial court was entitled to disbe­lieve the defendant's explana­tion for his absence).  
Moreover, even if the defendant's failure to appear was because of the threats, the trial court was not required to con­clude that the threats constituted sufficient cause allowing the defendant to be absent from trial.  
People v. Devoe
, 163 Ill. App. 3d 855, 858, 516 N.E.2d 1017, 1019 (1987) (no new proceed­ings required despite testimony that defendant's absence was a justi­fied attempt to avoid threats to his life).  Thus, we cannot say that the trial court erred in concluding that the defendant was not entitled to a new trial. 

Prosecutorial Misconduct

The defendant next claims that he was denied a fair trial because of prose­cu­torial miscon­duct.  Specifically, the defendant argues: (1) the prose­cu­tor pre­sent­ed improper identifica­tion testi­mo­ny; and (2) during closing argu­ments, the prose­cu­tor improper­ly comment­ed on the defendant's failure to appear.

Identification Testimony

It is clear from the record that the prosecutor experienced some difficul­ty when asking the victim to identi­fy the defen­dant and the co-defendants in photographs.  During that line of question­ing, defense counsel object­ed to: (1) the leading nature of the prosecutor's questioning; (2) the lack of founda­tion; and (3) the fact the photo­graphs had not been shown to defense counsel before they were used to question the victim.

In order for prosecutorial misconduct to warrant rever­sal, the behav­ior must be particularly egregious and constitute a material factor in the defendant's conviction.  
People v. John­son
, 264 Ill. App. 3d 1000, 1011, 637 N.E.2d 767, 774 (1994).  Prosecuto­rial miscon­duct may occur when the State ignores a trial court's ruling and continues the line of questioning ruled on by the court.  
People v. Hobbs
, 232 Ill. App. 3d 63, 71, 596 N.E.2d 772, 777 (1992).

Here, based upon our review of the entire record, we find no error.  Although defense counsel's objec­tions were valid, we do not believe the prosecutor was engaging in gamesman­ship in an effort to present improper identi­fi­ca­tion testimo­ny.  More­ impor­tantly, it does not appear that the defen­dant suf­fered any preju­dice as a result of the prosecutor's questioning.  We note that after defense counsel objected, the trial court ac­knowl­edged the objection and the prosecu­tor immedi­ately apolo­gized for not previously showing the photographs to defense counsel.  The prose­cu­tor then ten­dered the photographs to defense counsel, stopped using leading questions, and laid an ade­quate founda­tion for the photo­graphs.  Under these circum­stances, we are unwilling to say that the prosecu­tor engaged in miscon­duct which would justify a new trial.   
Closing Arguments

The defendant next claims that prosecutorial misconduct occurred during closing argu­ments.  The defendant argues that the prose­cu­tor improp­erly sug­gest­ed that the defendant had an obligation to testify and prove his innocence.  In support of this claim, the defendant points to the following prosecutorial comments: 

"I'm not going to go all over the testimony with you.  You were here.  You heard it.  You saw the witnesses.  You saw their demeanors when they testified.  You saw [co-defendant Perez] when he testified.  You heard the paus­es be­tween the ques­tions.  You heard -- you saw -- you saw [Perez'] demean­or.  I don't think there is anything else that needs to be said on that.  
Mr. Reyna?  Mr. Reyna is not even here.  He never even bothered to show up for his own tri­al.
  I think the Peo­ple have proved their case be­yond a rea­son­able doubt and I ask you to find the defen­dants guilty."  (Empha­sis add­ed.)

 Prosecutorial comments which imply that the defendant had to show his innocence are improper.  
People v. Tyson
, 137 Ill. App. 3d 912, 921, 485 Ill. App. 3d 523, 530 (1985); 
People v. Giangrande
, 101 Ill. App. 3d 397, 402, 428 N.E.2d 503, 508 (1981).  The State is barred from misstat­ing the law or making remarks that dimin­ish their burden of proof.  
People v. Buckley
, 282 Ill. App. 3d 81, 89, 668 N.E.2d 1082, 1088 (1996).  

Here, after carefully review­ing the above-noted comments, we believe the prosecutor did not improp­erly sug­gest­ that the defendant had to testify and prove his inno­cence.  Rath­er, we find the prosecutor's comment to be a brief and permis­si­ble reference to the defendant's absence from trial.  See 
People v. Ocasio
, 205 Ill. App. 3d 157, 162, 562 N.E.2d 549, 552 (1990); but see 
People v. Slaughter
, 84 Ill. App. 3d 88, 96, 404 N.E.2d 1058, 1065 (1980).

More­over, even if the State's closing argument is con­strued as suggesting that the defendant had an obliga­tion to testify and prove his innocence, we believe any error would have been cured by the exacting jury instructions given in this case.  See 
People v. Lawler
, 142 Ill. 2d 548, 564-65, 568 N.E.2d 895, 902-03 (1991).  Those in­struc­tions unequiv­o­cally stated that: (1) the defen­dant was pre­sumed innocent; (2) the State had the burden of proving the defendant guilty beyond a reasonable doubt; (3) the defen­dant was not re­quired to prove his innocence; and (4) the  defendant's failure to testify must not be consid­ered in arriv­ing at a verdict.  Under these circumstances, we are unable to say that the prosecutor's comments constituted reversible error.

Victim Impact Statement

The defendant next claims that at sentencing the trial court improperly considered victim impact statements prepared by the victim's parents.  The defendant argues that the statements should not have been considered because they were irrele­vant and prejudicial.

It is well estab­lished that the foresee­able conse­quenc­es of a defendant's actions on a victim and his family are relevant consider­ations in sentenc­ing.  
People v. Pavlovskis
, 229 Ill. App. 3d 776, 782, 595 N.E.2d 587, 591 (1992).  There­fore, the trial court could consider a statement from the parents address­ing the result of the defendant's conduct.  More­over, even if any portion of the victim impact state­ments addressed irrele­vant matter, the trial judge ex­press­ly noted that he would give the statements only the consid­er­ation that they were due.  See 
People v. D'Arezzo
, 229 Ill. App. 3d 428, 432, 593 N.E.2d 1076, 1080 (1992) (rejecting claim that sentenc­ing judge placed too much emphasis on parents' victim impact statements when judge stated he would disregard improper con­tents).  Under these circumstanc­es, we find no error.

 Excessive Sentence

The defendant next argues that the 28-year sentence imposed by the trial court was exces­sive.

Matters of sentencing are committed to the discretion of the trial court and are entitled to great weight and deference on appeal.  
People v. Perruquet
, 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884 (1977).  In imposing sentence, the court may consider the defendant's criminal record.  730 ILCS 5/5--5--3.2(a)(3) (West 1994).  Additionally, a court of review may not substitute its judgment for that of the trial judge simply because it might have bal­anced the appropriate factors differently.  
People v. Saunders
, 236 Ill. App. 3d 305, 312, 603 N.E.2d 32, 37 (1992).

Here, the defendant was sentenced as a Class X offender because of his prior felony convictions.  730 ILCS 5/5--5--3(c)(8) (West 1994).  Thus, he was eligible for between 6 and 30 years of imprisonment.  730 ILCS 5/5--8--1(a)(3) (West 1994).  The defen­dant was sen­tenced within the statutory range.  The record shows that the trial court proper­ly consid­ered all the evi­dence in aggrava­tion and mitigation and concluded that a 28-year sentence was appropriate.  After care­fully review­ing the record, we see no reason to disturb the trial court's judgment.   

Disparate Sentence

The defendant's final argument is that his 28-year sentence was dispa­rate to that of his co-defendants, Erickson and Perez.  The defendant notes that Erickson was sentenced to proba­tion and Perez was sentenced to three years' imprisonment.

Similarly situated defendants should not receive grossly disparate sentences.  
People v. Foster
, 199 Ill. App. 3d 372, 393, 556 N.E.2d 1289, 1303 (1990).  Howev­er, parity in sen­tenc­ing is not re­quired for all partic­i­pants in the same criminal activity.  
Foster
, 199 Ill. App. 3d at 393, 556 N.E.2d at 1303.  The differ­ence may be justified by the relative charac­ter and history of the co-defendants, the degree of culpa­bility, rehabili­ta­tive poten­tial, or a more serious criminal record.  
Foster
, 199 Ill. App. 3d at 393, 556 N.E.2d at 1303.  

Here, the record shows that Erickson's sentence was the product of a guilty plea. Therefore, it does not provide a suitable basis for comparison with the sen­tences of his co-defendants who went to trial.  See 
People v. Michaels
, 233 Ill. App. 3d 911, 916, 599 N.E.2d 1, 4 (1992).  Moreover, unlike Erickson and Perez, the defen­dant: (1) had prior adult felony convic­tions; (2) was subject to sentencing as a Class X offender because of his prior convictions; (3) failed to appear for trial or sentencing; and (4) instigat­ed the robbery and at­tack.  Thus, the defendant was not similarly situat­ed with his co-defendants and his disparate sentence argument must fail.

CONCLUSION

For the reasons stated, the judgment of the circuit court of Will County is affirmed.

Affirmed.

 LYTTON, P.J., and HOLDRIDGE, J., concur.