THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARY E. DOTSON, Defendant-Appellant.

First District (3rd Division) No. 85—1057

Opinion filed November 12, 1987.

420

Lupel & Amari, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Peter Fischer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Gary E. Dotson, appeals the trial court's denial of his motion for post-judgment relief (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401), which sought vacation of his May 14, 1979, conviction for aggravated kidnapping and rape. In his post-trial motion, defendant argued that the complaining witness committed perjury at the original trial by knowingly and falsely testifying that defendant committed the alleged offenses upon her.

Defendant was tried and convicted by a jury of the offenses. The trial court sentenced defendant on July 12, 1979, to not less than 25 nor more than 50 years in the Illinois State Penitentiary. Defendant served the sentence until May 12, 1985, when the Governor of the State of Illinois commuted his sentence. Defendant filed his motion for post-judgment relief on March 26, 1985. Beginning on April 4, 1985, hearings were held regarding the motion, at which defendant, complainant, and others testified. Complainant's testimony at the hearing on the motion was a recantation of her original testimony. In her recantation, complainant denied that the alleged offenses were committed upon her by defendant. On April 11, 1985, the trial court denied defendant's petition to vacate the conviction judgment. Defendant contends on appeal that the trial court erred in finding that the victim's recanted testimony failed to constitute sufficient grounds to vacate his conviction.

We refer to the opinion of the appellate court on the original appeal (*People v. Dotson* (1981), 99 Ill. App. 3d 117, 424 N.E.2d 1319), which sets forth the facts of the original trial. We also refer, as nec-

essary for purposes of this appeal, to facts from the original trial record. A brief review of the facts from the original 1979 trial follows. At that trial, complainant testified that while she was walking home from work at about 8:45 p.m. on July 9, 1977, defendant and another man forced her into the backseat of an automobile, where defendant raped her. Complainant stated that defendant attempted to write words on her stomach with a broken beer bottle after he completed the act of intercourse. Later, complainant was pushed from the car and began walking along the side of the road. A passing squad car stopped to assist her, and she was taken to the police station and then escorted to the hospital. On July 12, 1977, complainant helped police prepare a composite sketch of the rapist. On July 15, 1977, complainant identified defendant from a picture in a police mug book. Later that same day, she identified defendant in a police lineup.

Dr. Andrew Labrador, the examining physician at the hospital where complainant was taken, testified in 1979 that he observed a swelling on complainant's head, bruises on her arm, markings on her breast, and raised red scratches on her stomach, which looked like letters. A pelvic examination revealed abrasions to the hymen and trauma to the vaginal area. Timothy Dixon, a forensic scientist employed by the State of Illinois, testified that seminal material found on the underclothing of complainant came from a group B secretor, and that defendant was a group B secretor. Dixon also testified that a pubic hair removed from complainant's underwear was similar to that of defendant but dissimilar to that of complainant.

At the 1979 trial, defendant testified that on July 9, 1977, he was at a friend's home in Chicago until 8:30 or 9 p.m. and that afterward, he and two friends drove to Country Club Hills with the intention of attending several parties. They stopped at the home of Michael Marcum, and then went to the home of Tom Martens, who accompanied them to various parties. While the others attended the parties, however, defendant stated that he remained in the car, asleep in the backseat. Terry Julian, Pam Olsen, Karen Lawrence, and Thomas Martens testified on behalf of defendant and corroborated his alibi.

At the 1985 hearing on defendant's motion for a new trial, complainant testified that she had not been raped. She testified that on July 9, 1977, while on her way home from work, she ripped the buttons off of her shirt, ripped the zipper on her slacks, and possibly put dirt on her clothing, "to make it look like I had been accosted." She stated that she also ripped her brassiere "to make it look like it

had been forcefully removed." Additionally, complainant stated that she attempted to bruise her arms and one of her legs, put fingernail markings on her breasts, and took a broken bottle and marked her abdomen with it. She also made a small mark on her outer vaginal area, "to make it look like there was forceful entry." Complainant testified that she did these actions to make it appear, for the benefit of her legal guardians, that she had been forcefully raped. She stated that she had had sexual intercourse a couple of days before, and feared that she was pregnant.

Defendant contends on appeal that complainant's recantation testimony constituted sufficient grounds to vacate his 1979 conviction. Defendant asserts that the trial court erred in its strict application of legal precedent and its disregard for the "extraordinary" facts of the instant case. Defendant asserts that the instant case is distinguishable from cases relied on by the trial court in denying his motion. (*People v. Nash* (1966), 36 Ill. 2d 275, *cert. denied* (1967), 389 U.S. 906, 19 L. Ed. 2d 223, 88 S. Ct. 222; *People v. Marquis* (1931), 344 Ill. 261, 176 N.E. 314; *People v. Cihlar* (1984), 125 Ill. App. 3d 204, 465 N.E.2d 625, *aff'd* (1986), 111 Ill. 2d 212; *People v. Hilliard* (1982), 109 Ill. App. 3d 797, 441 N.E.2d 135; *People v. Bickham* (1974), 23 Ill. App. 3d 1074, 320 N.E.2d 478.) In those cases, defendant asserts, the recantation testimony was that of witnesses to the alleged crimes and not the victims. Further, in the cases cited by the trial court, the original trial testimony in question was not so material as to have controlled the outcome of the original trial, but was merely cumulative of other evidence. Defendant notes that complainant in the instant case, on the other hand, was the purported victim of the alleged crime, not merely a witness. Further, without her testimony, there exists no crime. Additionally, defendant contends that there is no motive for complainant to recant her testimony. Defendant asserts that complainant's recantation came as a result of her need for personal catharsis and a conviction to publish the truth, regardless of the consequences.

■ Defendant acknowledges that recantation testimony of witnesses ordinarily is not regarded as sufficient grounds for a new trial. (*People v. Marquis* (1931), 344 Ill. 261, 176 N.E. 314.) Defendant notes, however, that the law provides an exception in "extraordinary and unusual cases," in which recantation testimony may be sufficient to justify a new trial. (*People v. Marquis* (1931), 344 Ill. 261, 176 N.E. 314.) Defendant asserts that the extraordinary facts of the instant case bring it within that exception.

Defendant also asserts that the trial court abused its discretion

in failing to weigh impartially the facts surrounding the original trial testimony against the facts surrounding the recanted testimony. Defendant contends that the court disregarded several material inconsistencies in complainant's original trial testimony. Specifically, at the original trial, complainant testified that her slacks were muddy and her shirt was dirty and grimy, yet purportedly she was raped in the backseat of a car. Second, complainant originally testified that defendant had bitten her breast, but in 1985 she testified that the marks on her breast were fingernail marks, not bite marks. Third, complainant testified that she scratched her attacker's chest, but there were no such scratches found on defendant immediately after his arrest. Complainant also testified that she had scratched her attacker behind the ear and felt her nail dig in, but no such scratch marks were ever found on defendant. Further, complainant testified at the original trial that during the course of the alleged rape, defendant repeatedly tried to kiss her, and that he was "very close" to her. Nevertheless, in describing her alleged attacker's face to the police shortly after the alleged incident, she failed to give any description of a mustache or other facial hair. On cross-examination, she testified that she did not question the fact that the person identified in the police lineup had a mustache. Nor, she stated, did it surprise her that police failed to question her regarding the apparent discrepancy.

Additionally, defendant asserts that complainant's original testimony "did not square exactly" with the testimony of certain corroborative witnesses at the original trial. For instance, defendant asserts, complainant testified that she did not recall telling any police officer that her attacker had a mustache. Police officer Anna Carroll testified, however, that complainant told her that her attacker had a mustache.

Defendant asserts that the inconsistencies noted by the trial court in complainant's *recanted* testimony, on the other hand, are inconsequential and insignificant. Those "perceived inconsistencies" were not matters on which complainant contradicted herself, defendant contends, but rather were matters upon which her recollection did not "square exactly" with the recollections of others. Those apparent inconsistencies, defendant contends, are those which led the trial court to conclude that there was a lack of sufficient corroboration of the recantation.

■ Finally, defendant contends that the evidence presented in support of his motion to vacate the prior conviction judgment was sufficient to warrant a new trial. Defendant asserts that, assuming

*arguendo* that this court reverses the trial court as to its credibility finding, this court should also find that defendant met his burden of proof at the hearing below and is entitled to a new trial. *People v. Jennings* (1971), 48 Ill. 2d 295.

The Illinois Supreme Court stated in *People v. Marquis* (1931), 344 Ill. 261, 176 N.E. 315:

> "Recanting testimony is regarded as very unreliable, and a court will usually deny a new trial based on that ground where it is not satisfied that such testimony is true. Especially is this true where the recantation relied on involves a confession of perjury. The recanting testimony of witnesses will not ordinarily be regarded as sufficient ground for a new trial except in extraordinary and unusual cases. (33 A.L.R. p. 550, note.) The affidavit of a recanting witness is not entitled to so much weight as to justify the conclusion that the evidence given by him was corrupt and willfully false. The conclusion of the jury would rather warrant the presumption that his testimony was truthful and his affidavit false." (344 Ill. at 265, 176 N.E. at 315.)

Accordingly, the defendant bears the burden of showing by clear and convincing evidence that perjured testimony was used at his trial. *People v. Bracey* (1972), 51 Ill. 2d 514; *People v. Hilliard* (1982), 109 Ill. App. 3d 797, 441 N.E.2d 135.

The trial judge presiding at the 1985 hearings in the instant case was the same judge who presided over the original trial in 1979. At the close of the 1985 hearing, the trial court stated that complainant's testimony at the 1979 trial had been clear and convincing. The trial court observed complainant's demeanor at that time and stated that her demeanor was consistent with a person making a sincere claim of rape. Further, the trial court noted that the verdict of the jury was well supported by complainant's testimony and by corroborative evidence of her account of rape.

The evidence at the 1979 trial indicated that the victim made prompt complaints of rape on July 9, 1977, to the police, her mother, and the doctor. Police officers Carroll and Gedzun testified as to the victim's condition after the police found her wandering along the side of the road. The victim gave a detailed description of the offender to Officer Carroll on the night of the alleged offense, and several days later gave a description to a police artist. On July 15, 1977, after viewing hundreds of photographs, the victim identified defendant from a picture in a police mug book. On the same day, she identified defendant in a lineup. She also tentatively identified another man in

the lineup as possibly being the passenger in the front seat of the car on the night of the incident. The man whom she tentatively identified as the passenger was referred to at trial as a friend of defendant's. Defendant testified that he had spent some time with this friend on the night of the alleged incident.

Further, the trial court noted the lapse of time from the date of the alleged offense in 1977, and the date of the original trial in 1979, to the date of the hearing in 1985, when complainant recanted her original testimony. The trial judge stated that complainant's testimony at the 1985 hearing involved "a selective recollection or an inability to recall certain items on cross-examination." Additionally, the trial court found that complainant's recantation testimony was impeached by the testimony of several other witnesses at the 1985 hearings. The trial court noted that there was "a lack of sufficient corroboration of this recantation, whereas the original trial testimony had more than sufficient corroboration."

The victim's 1985 testimony was impeached in a number of instances. Police officer Katalinic testified that during an interview on March 18, 1985, the victim told him that, as a part of her actions in allegedly feigning rape, she had not injured her vaginal area at all. On April 4, 1985, however, only 2½ weeks later, the victim testified that she could not recall whether she injured the inside of her vagina, nor could she recall whether she had told Officer Katalinic that she had done so. Further, Officer Carroll testified regarding the victim's prompt report of rape and the detailed description of the offender which the victim gave her on July 9, 1977. The victim testified, however, that she did not recall providing anyone a description of any man on the night of July 9, 1977. Further, the victim did not recall when she spoke to Officer Carroll. She could not recall whether it was on the night of July 9, 1977, or on one of several days after that she initially complained of the rape. The victim's mother testified that the victim told her while they were in the police station that she had been raped that night. The victim testified, however, that she did not tell anyone between the time the police picked her up to the time that she went home that night that she had been raped.

██ ██ The credibility of the testimony in a post-conviction case is a matter for the trial judge to determine, and unless the determination by the trial judge is manifestly erroneous, it will be upheld. (*People v. Alden* (1959), 15 Ill. 2d 498; *People v. Bickham* (1974), 23 Ill. App. 3d 1074, 320 N.E.2d 478.) We have reviewed the record and find no error in the trial court's determination. The evidence amply

supports the court's dismissal of defendant's motion for post-judgment relief.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

McNAMARA, P.J., and WHITE, J., concur.