THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD D. BUSHEY, Defendant-Appellant.

Second District    No. 2—87—0092

Opinion filed June 6, 1988.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Charles R. Hartman, State's Attorney, of Freeport (William L. Browers and Lori J. Miller, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Richard D. Bushey, was convicted of aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(6)) after a jury trial in the circuit court of Stephenson County and was sentenced to three years' imprisonment. On appeal, Bushey contends that: (1) he is entitled to a new trial because the evidence adduced at the post-trial hearing established that he was not willfully absent from his trial, and (2) defense counsel did not submit the State's case to a meaningful adversarial testing, depriving him of the effective assistance of counsel.

We affirm.

On April 14, 1986, defendant was charged with aggravated battery for striking a peace officer acting in the line of duty. On May 30, 1986, with defendant in open court, a pretrial date was set for June 13, and a trial date was set for June 17. The defendant did not appear on the June 13 pretrial date. Defense counsel indicated that Bushey called counsel's office that morning, stating that he believed he was to appear at 1:30 p.m. Counsel then stated that his secretary instructed the defendant to meet him in court at 1:30 p.m. The defendant had not appeared in court by 2:45 p.m., so the court granted a motion for bond forfeiture and issued a bench warrant for defendant's arrest.

The defendant's trial was scheduled for 9:30 a.m. on June 17. When the defendant had not appeared by 9:50 a.m., the State moved to have the trial conducted *in absentia*, pursuant to section 115—4.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—4.1). A hearing was then held to determine whether Bushey willfully absented himself from the proceedings. The sole witness at this hearing was Crystal Wool, defendant's ex-girlfriend. Wool testified that during a recent hospital stay, she had a telephone conversation with Bushey. She stated that during this conversation, Bushey told her that he was not going to go to court because he did not want to be "put away." Defense counsel indicated to the court that he had no knowledge of Bushey's whereabouts and that he last spoke to Bushey the afternoon of June 13. At that time, counsel advised Bushey to turn himself in to police, and Bushey responded that he did not want to go to jail. The court ruled that defendant's absence was willful and ordered that the trial proceed.

The State's first witness was Crystal Wool. Wool testified that she and Bushey had an argument at her home in Freeport on April 11, 1986. Wool called the police, but before the police could arrive, Bushey left Wool's home. After the police left, Bushey returned and began to hit Wool because she called the police. Another man who was present restrained Bushey, and Wool again called the police. Wool and Bushey were in the backyard of the house when the police arrived. Wool then stated that the defendant began "swinging" at the police as they approached and while they were handcuffing him. Wool concluded her testimony by relating the conversation she had in the hospital with Bushey when he indicated that he was not going to appear at his trial.

The State's next witness was Officer Greg Marsh of the Freeport police department. Officer Marsh testified that he and Officer Michael Rivera arrived at 641½ West Clark in Freeport in response to a call.

When Marsh and Rivera arrived at the home, a male answered the door and told the officers that he did not know where Wool or Bushey were. The officers then moved to the rear of the house, where they found Wool and Bushey talking. Wool asked the officers to remove Bushey, and the officers informed Bushey that he was under arrest for criminal trespass. The officers asked defendant to place his hands on a nearby wall and move his feet back, so the officers could search him. After the search, Officer Rivera began to apply handcuffs to Bushey. Rivera placed a handcuff on Bushey's right hand, but before he could place a cuff on Bushey's left hand, defendant pushed away from the wall and said: "You guys aren't fucking arresting me." Defendant then pivoted and struck Officer Rivera with his left hand. A struggle ensued, and defendant struck both officers during the struggle. Further police assistance arrived, and the defendant was subdued.

Michael Fox testified that he and Bushey had been drinking before the incident took place. He also stated that Bushey was in a "bad mood" before Wool called the police. Fox then saw the police go around the house to get Bushey. Fox saw Bushey attempting to hit the police officers but did not see him actually strike an officer. Fox then helped another man calm Bushey down and then led Bushey to the police car. The State's final witness was Michael Rivera, the complaining witness. Rivera's testimony corroborated Marsh's testimony.

After the State rested, the defense rested, and closing arguments were made to the jury. The jury then returned a verdict of guilty. On July 9, 1986, a sentencing hearing was held *in absentia*, and the defendant was sentenced to three years' imprisonment. The bench warrant for defendant was later served, and defendant appeared in court, where he was advised of his right to move for a new trial and sentencing hearing. On August 8, a new public defender was appointed, and an oral post-trial motion was made. Later, the defendant indicated to the court that he wanted to allege that John Graff, his first public defender, was ineffective. The court then appointed private counsel to act as a special public defender.

On January 8, 1987, a hearing was held on defendant's motion for new trial. At the hearing, the defendant testified that John Graff never informed him of his trial date and that if he had known of the trial date, he would have appeared. Defendant also testified that he never had a conversation with Wool about his trial dates. On cross-examination, Bushey admitted that he was in court when the dates were set, but was unaware of the dates being set. Bushey also stated that his phone conversation with Graff took place on the date of

Bushey's trial. The other witness called by the defendant was Crystal Wool. Wool stated that she did not recall Bushey telling her that he was not going to appear in court. On cross-examination, Wool stated that she also did not recall her testimony from the trial, because she was on medication. The State called one witness, John Graff, defendant's former counsel. Graff testified that the telephone conversation he had with Bushey took place on the date of the pretrial conference. Graff also stated that during that conversation he did not remind Bushey of the trial date, but advised him to turn himself in to the police. The trial court denied the motion for new trial, and this appeal ensued.

■ The first issue Bushey raises is that the State did not prove that his absence from the trial was willful. Defendant's argument primarily focuses on the evidence brought out during the hearing on the post-trial motion. As the State correctly points out, there are two distinct inquiries where the question of the defendant's absence from the proceeding is involved. At the hearing before trial, the burden is on the State to show substantial evidence that defendant was willfully absent from the trial. (Ill. Rev. Stat. 1985, ch. 38, par. 115—4.1(a).) However, after trial, the defendant may request a hearing and will be granted a new trial if he can show that his failure to appear was not his fault and beyond his control. (Ill. Rev. Stat. 1985, ch. 38, par. 115—4.1(e).) Because the defendant's argument stresses the evidence adduced post-trial, our review will be confined to whether the trial court's determination that the defendant did not meet his burden of proof was correct. We conclude that it was.

■ We will not overturn a trial court's decision on a motion for new trial unless a manifest abuse of discretion is shown. (*People v. Thompson* (1984), 125 Ill. App. 3d 665, 676, 466 N.E.2d 380, 388.) To determine whether the trial court abused its discretion, we "will consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial." (*Thompson*, 125 Ill. App. 3d at 676, 466 N.E.2d at 388.) Our review of the evidence does not indicate that the trial court abused its discretion.

■ The defendant's testimony consisted of a denial that he knew of his court dates, despite the fact that he was present in open court on the day his pretrial and trial dates were set. With respect to Crystal Wool's testimony, it is well established that recantation testimony is not ordinarily a sufficient basis for a new trial. (*People v. Marquis* (1931), 344 Ill. 261, 265, 176 N.E. 314, 315; *People v. Dotson* (1987), 163 Ill. App. 3d 419, 422, 516 N.E.2d 718, 720.) The State countered with testimony from Bushey's lawyer, who stated that he informed

Bushey during a phone call that he should turn himself in, because a bench warrant was issued after Bushey was absent from his pretrial hearing. In light of the questionable credibility of Wool's recanted testimony, Bushey's admitting that he was present when his court dates were set, and the evidence adduced at trial, we conclude that the trial court did not abuse its discretion in denying the motion for a new trial.

Defendant also argues that he was deprived of the effective assistance of counsel. Specifically, defendant contends that his counsel did not submit the State's case to a meaningful adversarial testing and made numerous errors, oversights, and omissions. We disagree.

■ In order for a defendant to establish the ineffective assistance of counsel, he must show that counsel committed such serious errors that by an objective standard his performance was incompetent and that the errors were so prejudicial that without them the result of the proceedings would have changed. (*Strickland v. Washington* (1984), 466 U.S. 668, 687-94, 80 L. Ed. 2d 674, 693-98, 104 S. Ct. 2052, 2064-68; *People v. Hicks* (1987), 162 Ill. App. 3d 707, 710, 516 N.E.2d 807, 809.) In some instances, prejudice against the defendant is presumed by counsel's actions. (*People v. Hattery* (1985), 109 Ill. 2d 449, 461, 488 N.E.2d 513, 517, *cert. denied* (1986), 478 U.S. 1038, 92 L. Ed. 2d 727, 106 S. Ct. 3314.) In *Hattery*, the court found that if an attorney admits his client's guilt throughout a trial when the record does not indicate that the defendant consented to this strategy, the State's case was not subjected to a meaningful adversarial testing. (*Hattery*, 109 Ill. 2d at 464-65, 488 N.E.2d at 519.) The *Hattery* exception only applies in the narrow instance where the defendant's attorney admits his client's guilt. (*People v. Bone* (1987), 154 Ill. App. 3d 412, 415-16, 506 N.E.2d 1033, 1036.) Defendant does not claim, nor does the record reflect, such an admission in this case; therefore, we will apply the regular *Strickland* analysis.

■ Defendant argues that his counsel's waiving of opening statement was an error and his cross-examination of the State's witnesses concerning the defendant's drug and alcohol use was a "character assassination" of defendant which aided the jury in finding against the defendant. While the defendant accuses his counsel of having no discernible trial strategy, it is evident that counsel's examination was an attempt to show that the defendant was too intoxicated to have formed the requisite intent to commit the offense. "Every criminal defense attorney is subject to second-guessing by his client upon the client's receiving a conviction after trial." (*People v. Costales* (1988), 166 Ill. App. 3d 234, 239, 520 N.E.2d 421, 424.) Counsel's actions in

this case were a reasonable attempt to fashion some sort of defense for a defendant who willfully absented himself from the trial.

Defendant also stresses the fact that Graff did not inform him of his trial date or request a continuance when defendant did not appear at the appropriate time. This argument ignores the fact that defendant was in open court when the trial dates were set and even called Graff on the day of the pretrial hearing. At that time, he was told to be in court at 1:30 p.m., but he never appeared. Bushey then called counsel again at approximately 5 p.m. Counsel informed him that he should turn himself in, and defendant stated that he did not want to go to jail. With respect to counsel's failure to ask for a continuance, it is obvious from statements made to Graff and to Wool that the defendant was not going to appear for trial, and a continuance would not have served any purpose. Although Graff might have kept closer watch on his client after learning of his desire to avoid the proceedings, we cannot say that Graff's actions prejudiced his client.

Defendant also alleges that Graff was incompetent because he did not file any post-trial motions on Bushey's behalf. In that a post-trial motion was filed by another attorney, and a hearing was held on such a motion, we fail to see how defendant was prejudiced by Graff's failure to file the motion. Even if we were to find that counsel's performance was incompetent, in light of the overwhelming evidence presented against defendant, it is unlikely that any of the alleged errors caused prejudice to Mr. Bushey.

Accordingly, the judgment of the circuit court of Stephenson County is affirmed.

Affirmed.

LINDBERG, P.J., and INGLIS, J., concur.