NOTICE
Decision filed 12/02/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230629-U

NOS. 5-23-0629, 5-23-0630 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | Nos. 22-CF-1036, 22-CF-438 |
| | ) | |
| JOSEPHINE D. ZAWISZA, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Boie and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's sentence is affirmed where no clear and obvious error was apparent, and defense counsel was not ineffective for failing to object to the court's consideration of defendant's probationary failures and rehabilitative potential at sentencing. However, the trial court's failure to conduct a section 115-4.1(e) hearing was error and we remand the case for a hearing to determine if defendant's failure to appear at her sentencing hearing was both not her fault and due to circumstances beyond her control.

¶ 2    Following a stipulation to the State's allegations in a petition to revoke probation, defendant, Josephine D. Zawisza, was sentenced, *in absentia*, on two charges to which she previously pled guilty pursuant to a fully negotiated plea. On appeal, she argues that the trial court's sentence was plain error and counsel provided ineffective assistance. She also argues that the trial court erred by failing to provide her with a hearing pursuant to section 115-4.1(e) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-4.1(e) (West 2022)) that would

1

allow the court to determine whether her failure to appear at sentencing was both without her fault and due to circumstances beyond her control. For the following reasons, we affirm the sentence but remand to allow the trial court to conduct a section 115-4.1(e) hearing.

¶ 3                                  I. BACKGROUND

¶ 4     On April 11, 2022, in case No. 22-CF-438, defendant was charged, by information, with unlawful possession of a stolen vehicle in violation of section 4-103(a)(1) of the Illinois Vehicle Code (625 ILCS 5/4-103(a)(1) (West 2022)) related to a 2012 Chevrolet Cruze. She was also charged with a second count of unlawful possession of a stolen vehicle in violation of the same statute related to a 2003 Ford F-250. Probable cause for the initial charge revealed that defendant took the 2012 Cruze, along with various items from a freezer in the garage, where the Cruze was parked. As to the second charge, it was revealed that defendant later took the Cruze to a repair shop to have them work on the vehicle. When the business informed defendant that they could not work on the vehicle, defendant abandoned the Cruze and stole a 2003 Ford F-250. She was eventually stopped by the Rantoul police and claimed she had permission to drive both the Cruze and the Ford F-250, but both vehicle owners denied knowing defendant or having any relationship with her. Following her initial appearance, defendant was released on her own recognizance and ordered to appear for court on May 3, 2022.

¶ 5     On May 4, 2022, after failing to appear in court, a warrant for defendant's arrest was issued with bond set at $10,000. Following her arrest on May 13, 2022, defendant was arraigned on May 16, 2022. She was again released on her own recognizance and ordered to appear for court on June 7, 2022. On June 7, 2022, defendant appeared, waived her right to a preliminary hearing, and pled not guilty. Pretrial was set for July 12, 2022. Defendant failed to appear at the hearing and a second arrest warrant was issued.

¶ 6    On July 30, 2022, in case No. 22-CF-1036, defendant was charged by information with residential burglary, after entering the dwelling of Cail Daley, with the intent to commit theft in violation of section 19-3 of the Criminal Code of 2012 (720 ILCS 5/19-3 (West 2022)). An arrest warrant was issued, and defendant was arrested on August 7, 2022. On August 7, 2022, a bail bond release ($5000) was issued with an order that defendant have no contact with the homeowner. Defendant's arraignment was scheduled for August 8, 2022, and this case was consolidated with her two previous cases (21-CM-359[1] and 22-CF-438).

¶ 7    A plea hearing was held on September 8, 2022. On that date, defendant entered a negotiated plea, waived her right to trial, and pled guilty to the charges in case No. 22-CF-1036 (residential burglary) and count I of case No. 22-CF-438 (unlawful possession of a stolen vehicle). She was admonished of a potential sentence between 4 and 15 years in case No. 22-CF-1036 unless she received probation for acceptance into the Treatment Alternatives for Safe Communities (TASC) drug program. She was further admonished of a potential sentence of three to seven years in case No. 22-CF-438 and that the sentences could be ordered to run consecutively. In return for the guilty plea in case No. 22-CF-438, the State agreed to a sentence of 36 months' probation, 50 hours public service, various fees, and testing along with substance abuse and mental health evaluations. The State would dismiss count II and the charges in case No. 21-CM-359 (aggravated assault). As to case No. 22-CF-1036, the State agreed to a sentence of 36 months of TASC probation, payment of fines, 50 hours of public service, and a requirement that defendant undergo substance abuse and mental health evaluations and follow any recommendations related thereto. The court clarified that only 50 hours of public service total for both cases was required.

---

[1]This 2021 case involved charges of aggravated battery.

¶ 8    The factual basis related to the residential burglary was that defendant was in a college student's apartment when he returned. She told the student that she was the property manager and then ran out the back door. It was also noted that defendant was eating leftover food when the student returned to the apartment and that defendant rummaged through the freezer while she was there. The court noted that it received the TASC letter and would approve her for TASC. The court advised defendant that she needed to appear at probation the following day and explained that was a "special kind of sentence." It then stated,

> "You were required to go to prison between 4 and 15 years. The only reason you're not is because you have a drug problem and TASC probation says that they want to monitor you and you're willing to do that. *** So this is kind of a gift."

¶ 9    On December 15, 2022, a probation violation report was filed with the court. The report alleged that defendant failed to stay in contact with probation, failed to appear for intake appointments on September 21, 2022, and October 7, 2022, was admitted to a facility on November 7, 2022, received a mental health evaluation, was discharged from the facility on November 12, 2022, was unsuccessfully discharged from TASC probation on November 14, 2022, failed to report to the police following her discharge, failed to report for an intake appointment on December 15, 2022, and her whereabouts were unknown. On December 16, 2022, the State filed a petition to revoke probation based on the allegations in the report. A warrant for defendant's arrest was issued on December 21, 2022.

¶ 10    Defendant was arrested on February 2, 2023, and at the hearing held on February 3, 2023, denied the allegations in the petition, was admonished as to trial and sentencing *in absentia*, and was released on her own recognizance. She was ordered to report to probation on February 6, 2023.

¶ 11    At a hearing on February 8, 2023, the court noted defendant failed to appear at probation on February 6, 2023. Counsel stated that defendant called and said she was having transportation issues and would be there on February 7, 2023. However, defendant did not call or show up on February 7, 2023, either. Defendant appeared for her court hearing on February 8, 2023. The State asked the court to revoke defendant's recognizance bond. Defense counsel requested defendant remain on recognizance. Counsel stated that defendant thought she was supposed to be at probation on February 8. Counsel further stated that defendant had a TASC meeting on February 13, 2023. The court advised defendant that if she met with probation that day, attended the TASC appointment on February 13, 2023, and appeared in court on February 13, 2023, it would not put her in jail. The court told her if she did not show up for the meetings, she would go to jail. The court further stated that it was her "last chance."

¶ 12    At the hearing on February 13, 2023, defendant appeared, and her counsel confirmed defendant's attendance at the previously scheduled meetings. Counsel advised the court that defendant had another appointment scheduled for March 13, 2023. Her next court date was set for March 22, 2023, and defendant was advised to comply with the conditions of her probation.

¶ 13    On March 22, 2023, defendant failed to appear. Her counsel stated that defendant had been in contact with TASC and probation but neither heard from defendant and counsel did not know why defendant was not present. An arrest warrant with $25,000 bond was issued. Defendant was arrested on March 25, 2023. Defendant appeared in court on March 27, 2023. Her counsel stated that defendant thought court was on March 27, 2023, so she failed to appear. The court stated this was her "one-time second chance." Defendant was released on her own recognizance and was ordered to appear for court on April 19, 2023.

¶ 14    Defendant failed to appear at the hearing on April 19, 2023. Counsel stated that her probation letter was "returned to sender." Defendant was unsuccessfully discharged from the TASC program for the second time on April 4, 2023, because she did not appear at her last court hearing. She had not completed her intake appointment for probation and counsel had not heard from her client. The State requested arrest warrants, which were issued with a $50,000 bond on each case.

¶ 15    Defendant was arrested pursuant to the warrants on May 21, 2023, and appeared before the court on May 22, 2023. She was advised that there was a hearing scheduled for June 1, 2023. Defense counsel requested defendant remain released on her own recognizance. The State took no position on the request and the court released defendant on her own recognizance and ordered her to appear in court on June 1, 2023, for the petition to revoke probation hearing.

¶ 16    Defendant appeared for the hearing on June 1, 2023, and stipulated to the allegations set forth in the petitions to revoke. No agreement was reached as to sentencing. Defendant was advised of the potential sentences for the residential burglary and possession of a stolen vehicle charges and that she would be resentenced. The court admonished defendant and asked questions about her ability to stipulate to the allegations in the petitions to revoke. After hearing the responses to its own questions and the factual basis for the petitions, the court accepted defendant's stipulations. The sentencing hearing was scheduled for July 20, 2023.

¶ 17    Defendant failed to appear on July 20, 2023. Her counsel advised the court that defendant contacted the court that morning and said her ride fell through, she was going to take an Uber and would be late for court. She thought she would be there by 11:30. The court noted it was 11:47 and proceeded with the sentencing hearing *in absentia*. No objections, additions, or corrections were needed for the presentence report, except for the amount of fees listed. The parties agreed

6

that case No. 23-CF-740 (unlawful possession of methamphetamine) remained pending, with a pretrial conference set that same day. The court confirmed that the two sentences could be concurrent and were nonprobationable but for TASC. The presentence investigation report (PSI) noted defendant was approved for a third time for the TASC program on July 10, 2023, and was scheduled to meet with TASC that day, but never appeared.

¶ 18    The State called Officer Edwin Brown, a police officer for the Village of Mahomet. He testified that on June 12, 2023, he pulled over a Dodge Caravan and defendant was a passenger in the vehicle. A packet of methamphetamine was found in her purse along with a pocketknife. No other evidence was presented, and the parties presented argument in aggravation and mitigation.

¶ 19    The State argued that based on the PSI defendant had "a massive raging drug problem" that included injecting half a gram of methamphetamine daily, smoking crack, and doing cocaine. The State further argued that defendant failed TASC twice and failed to appear for the third attempt so she was "0 for 3" on the only thing that could keep her out of prison. She had three children that were not in her custody and was forbidden (by her own admission) from seeing until she was sober. The State argued that defendant continued to commit felonies, and the State believed the only place defendant would receive treatment was prison. It argued that a fourth shot at TASC was unwarranted and defendant's failure to appear at her own sentencing hearing did not help the situation. The State argued that probation was not an option for the residential burglary conviction and that defendant needed "confinement to actually get her life together," stating a sentence of incarceration seemed fair and fit for defendant to get treatment and get her life back together.

¶ 20    Defense counsel argued that it was unfortunate that drug court was not an option for defendant. Counsel argued that the residential burglary case occurred because a door was left unlocked, and defendant entered the apartment to eat food. When the owner arrived, defendant left

7

the food on the counter and ran out. Similarly, the vehicle at the construction site involved an unattended vehicle with the keys in it. Defendant helped herself to that vehicle when she could not get people to fix the other vehicle she was driving. Counsel argued that there was nothing violent about defendant's behavior but that it did "reek of someone who is dependent on drugs" and in a bad way. "Her own admissions show that she has, as the State had put it, a raging drug problem, and I can't deny that." Counsel argued that defendant was previously offered TASC probation, but her addiction got in the way of getting treatment, noting that defendant attended MacNeal for mental health and substance abuse treatment in November 2022 but left prior to completion of a more in-depth evaluation. Counsel added that defendant had a ninth-grade education and desired to obtain her GED, but her drug addiction was hindering that progress as well as visitation with her children, stating, "It's just clear that this addiction has taken over her entire life." Counsel agreed that defendant needed treatment but stated prison was not the appropriate place for defendant to receive that treatment.

¶ 21 The court noted it was noon and defendant had still not arrived. The court found mitigation related to her children. It noted defendant was self-employed, uneducated, had no GED, and was in fair health. It further noted defendant received mental health treatment the previous year, had been abused in many ways, was part of the sex trade, and wanted to move from Champaign. The court also noted a suicide attempt when defendant was young, use of drugs and alcohol, and failure at TASC, finding all this evidence was mitigating. The court addressed aggravation in terms of deterrence to her but noted her criminal history was "really not too aggravating." The court found it a "very sad and unfortunate situation where the defendant has a serious drug addiction." It noted probation staff and TASC attempted to assist defendant, but defendant kept "dropping the ball." It further noted defendant failed to show up for court and probation interviews, which did little to

8

show rehabilitative potential or an ability to comply with terms and conditions of probation. The court noted this was not about her performance while on probation but her rehabilitative potential. It addressed defendant's multiple missed appointments, agitation, raising her voice to the probation officers, her hostility and belligerence shown by her flipping off her attorney, and her continued drug use to ultimately find that defendant had not shown substantial rehabilitative potential. As to the crimes, the court noted defendant saw the vehicle with keys in it and broke into a home and ate food, classifying them as "crimes of opportunity." The court stated,

> "I don't think imprisonment's necessary to protect the public, really it would just be to protect her. But I do believe a community-based sentence would deprecate the seriousness of her conduct and be inconsistent with the ends of justice."

¶ 22    The court sentenced defendant to five years in the Illinois Department of Corrections (IDOC) for the residential burglary conviction and four years in IDOC for possession of a stolen vehicle, providing credits of 40 days and 47 days of incarceration, respectively. The court also ordered the sentences to run concurrently. The court would allow defendant to be considered for drug treatment while incarcerated. The court advised of defendant's appeal rights and stated it would issue two no-bond warrants. The State moved to dismiss pending case No. 23-CF-740, and the court dismissed it.

¶ 23    Defendant was arrested on the warrants on August 15, 2023. She appeared in court and was advised of the sentence imposed *in absentia*. As she was being admonished as to her rights she stated, "Your Honor, I just want to go do my time and go home." Despite her statement, the court again provided the necessary admonishments for her rights to appeal.

¶ 24    On August 21, 2023, defense counsel filed a motion to withdraw stipulation to petition to revoke. In support, the motion claimed defendant's "stipulations were not knowing and voluntary.

9

She further asserts that [she] was not given the appropriate option or resources to be successful on her probation and TASC probation."

¶ 25 The motion was heard on August 23, 2023. Defendant testified that she wrote to her counsel and stated she wanted to appeal her sentences. She agreed she did not appear for the sentencing hearing. She stated that the reason she wanted to withdraw the stipulations was because she did not feel that she was given proper resources when she was previously placed on probation and wished to be considered for drug treatment. She explained that she lived out of the area and had no transportation resources because local transportation services did not offer rural pick-ups in Mahomet where she lived. When asked where she was supposed to meet people while on probation, defendant stated that she had no set schedule or place for meeting. She stated that nothing was ever set with TASC, and she never met the TASC probation officer. She clarified that she did meet with her county probation officer a few times and that officer provided her with resources about local transportation services. However, when defendant called the transportation service, it no longer offered service for the rural routes. She stated there was no way for her to get to town because when she called Uber, their GPS systems always got messed up and she would "have to walk like four or five blocks just to be able to be picked up."

¶ 26 When asked if there were any other reasons why she believed she should be entitled to withdraw her stipulations, she stated,

> "Honestly, I just don't think DOC is going to be successful for me. I think that's a cop-out and a way for the State to just shove me under the rug. And I'm sorry if that sounds rude or disrespectful, but I'm worth saving. I'm worth the effort for myself and for everybody else."

¶ 27    Defense counsel then asked why she was not present for her sentencing hearing on July 20, 2023. She replied,

> "I had gone to work the day before. In order to assure myself that I had a ride to court, and I had an Uber paid for and everything. I went and did work out at the Blakely's property, and then was told that the morning of court, that oh, the person that is paying for your Uber can no longer pay for your Uber. Deb, the lady that I went and did some work for, she unfortunately had eye surgery that morning, so she couldn't give me a—a ride to court, which wasn't her failure, it was just timing of things. But I did try to make it here. I was scrambling like last minute, like freaking out trying to get here."

¶ 28    Defendant testified that her employment involved working on property in Candlewood subdivision cutting down a tree, moving a bunch of logs, and other yard work. She stated that she contacted the court, and they sent an email to the judge's office. She also tried to contact the probation officer's secretary the same day and the next morning tried to get a court date set up. She could provide no other reason why she believed she should be able to withdraw her stipulation to the petitions because she was "a little nervous." No questions were asked by the State.

¶ 29    Defense counsel argued,

> "I'm not sure that her—her reasoning will basically be sufficient, but she does wish to move to withdraw the stipulations to her petitions. I know that at that point in time we'd at least have to have hearings on it, we might be back in kind of the same position we are now. In the alternative I think [defendant] is requesting that she be allowed to have a new sentencing hearing, or that the sentencing be re-opened[,] and she'd have an opportunity to provide some information to the court, based on sentencing."

11

¶ 30    The State argued that the record would show that defendant's stipulation was knowing and voluntary based on questions asked by the court. The State also questioned the timeliness of the defendant's motion to withdraw the stipulation. Finally, the State also argued,

"[T]here's nothing listed in here that would qualify to withdraw an admission or stipulation, your Honor. These sound like issues that could have been brought up at a violation hearing or at a sentencing hearing, or most appropriately with a probation officer during the probationary period of time. I don't think that the assertions here would rise to the level of withdrawing an admission or stipulation at this time, your Honor."

¶ 31    The court stated that it was a close call on whether the request was timely, but opined that pursuant to the mailbox rule, the request would likely be timely. The court further stated,

"This is a motion to withdraw stipulation, this is not a motion for a new hearing on the petition, or a new sentencing hearing pursuant to statute, where you have to show that a defendant was unable to attend through no fault of their own. This is essentially a motion to withdraw the stipulation. *** [I]f you want to challenge the correctness of the sentence or any aspect of the sentencing hearing, then a motion with respect to that must be filed."

¶ 32    The court found that defendant was displeased with her sentence, but did not state that "she didn't knowingly and voluntarily enter into this stipulation." Although it had no transcript, it believed that the proper admonishments were provided, and defendant had no questions at that time. She had the right to a hearing where she could have argued that she was not provided the appropriate options or that her failure was not intentional or willful, but that was "really not appropriate at this time after the stipulation." The court acknowledged hearing a lot of excuses as to why she could not make the sentencing hearing but stated that a "defendant has the obligation

12

to do what they need to do, and the probation officer and the TASC officer can only do what they can do to help the defendant."

¶ 33    The court noted that the probation violations to which she stipulated included failures to attend intake appointments on September 21, October 7, and December 15, in the previous year and "she failed to provide an updated address, and was considered an absconder, which is in complete contradiction to her testimony that *** she was meeting with her probation officer." The court found, based on the facts, that insufficient grounds were shown that her stipulation should be withdrawn and denied the motion. The court further stated,

> "With respect to a sentencing hearing, again we're not on the statute dealing with wanting a new sentencing hearing. But even if I were to reach the issue of whether or not I should just grant a new sentencing hearing, again what I heard at the sentencing hearing from an officer, there was no mitigation. It's clear that I stated that there was mitigation here. She stipulated *** she has children, she was self-employed, but there was also aggravation, the deterrent message, her prior record. But what was very compelling to this court was her performance while on probation. Although I was not sentencing her for how well she did on probation, it gave me a better idea of her rehabilitative potential.
>
> Clearly she was missing appointments, she was making very little effort, she failed to appear at sentencing, and I found that she had very little rehabilitative potential at that time until she gets the treatment that she desperately needs. So therefore any possible request for a new sentencing hearing is denied as well."

Following the court's statement, defendant timely appealed.

¶ 34                                II. ANALYSIS

¶ 35    On appeal, defendant argues that the trial court abused its discretion in sentencing her to five years for residential burglary and four years for possession of a stolen vehicle. She further argues for plain error review or ineffective assistance of counsel related to claimed errors at sentencing. She also argues that the trial court erroneously failed to provide her with a hearing pursuant to section 115-4.1(e) of the Code (725 ILCS 5/115-4.1(e) (West 2022)) and that defense counsel was ineffective for failing to file a motion requesting a hearing to determine whether defendant's failure to appear at her sentencing hearing was not due to her fault and was due to circumstances beyond her control.

¶ 36                                A. Sentence

¶ 37    Defendant argues that the trial court erred by sentencing her to five years in IDOC on the residential burglary conviction and four years in IDOC on the possession of a stolen vehicle conviction. In support, she argues that the court failed to consider the non-violence associated with the offenses and instead improperly punished her for her drug use and failures to appear. Defendant admits the issue was not raised before the trial court and therefore requests this court consider the issues under either plain error or as ineffective assistance of counsel.

¶ 38    To preserve a sentencing issue on appeal, a defendant must raise a contemporaneous objection and raise the issue in a postjudgment motion. *People v. Jackson*, 2022 IL 127256, ¶ 15. Failure to object, and raise the issue in a motion to reconsider, precludes review of the error on appeal. *People v. Herron*, 215 Ill. 2d 167, 175 (2005). The rationale behind this result is "because failure to raise the issue at trial deprives the circuit court of an opportunity to correct the error, thereby wasting time and judicial resources." *Jackson*, 2022 IL 127256, ¶ 15 (citing *People v. McLaurin*, 235 Ill. 2d 478, 488 (2009)). The rule "also prevents criminal defendants from sitting

14

idly by and knowingly allowing an irregular proceeding to go forward only to seek reversal due to the error when the outcome of the proceeding is not favorable." *Id.*

¶ 39　Forfeiture, however, is not absolute, and Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) "embodies the exception" to the forfeiture rule. *People v. Carlson*, 79 Ill. 2d 564, 576 (1980). "The plain-error rule bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). To consider an error that was not raised, the appealing party must request review under the plain-error doctrine. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). Here, this was done.

¶ 40　However, "[t]he plain error rule does not call for the review of all forfeited errors." *Jackson*, 2022 IL 127256, ¶ 19. The "plain error rule is a narrow exception to forfeiture principles" and is limited to "[p]lain errors or defects affecting substantial rights." (Internal quotation marks omitted.) *Id.* ¶ 18. Application of the rule allows for review of a forfeited error under two possible prongs. *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007). To obtain relief under either prong, the defendant "must first show that a clear or obvious error occurred." *Hillier*, 237 Ill. 2d at 545. "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.* (citing *People v. Hall*, 195 Ill. 2d 1, 18 (2000)). Defendant bears the burden of persuasion for each prong and failure to meet the burden will result in the reviewing court honoring the procedural default. *Id.*

¶ 41　The trial court has broad discretion in imposing a sentence, and its sentencing decisions receive great deference. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). Deference is given because the trial court is in the best position to observe the defendant, the proceedings, and has the best opportunity to weigh relevant sentencing factors, such as " 'the defendant's credibility,

15

demeanor, general moral character, mentality, social environment, habits, and age.' " *Id.* at 212-13 (quoting *People v. Stacey*, 193 Ill. 2d 203, 209 (2000)). This court will not substitute our judgment for that of trial court just because we might weigh the factors differently. *Id.* at 213. We will not disturb the sentence absent an abuse of discretion. *Id.* at 212. A trial court abuses its discretion if it imposes a sentence that is " 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Id.* (quoting *Stacey*, 193 Ill. 2d at 210).

¶ 42    Under these criteria, we first consider whether a clear or obvious sentencing error occurred. Generally, a sentence falling within the statutory range is presumed proper. *People v. Burton*, 2015 IL App (1st) 131600, ¶ 36. There was no argument presented claiming the trial court's sentences imposed were not within the statutory ranges for both offenses. The Class 1 felony residential burglary charge had a sentencing range of 4 to 15 years' imprisonment. See 730 ILCS 5/5-4.5-30(a) (West 2022). The Class 2 felony for possession of a stolen vehicle charge had a sentencing range of three to seven years. *Id.* § 5-4.5-35(a). It was undisputed that the trial court had the authority to order the sentences to run consecutively.

¶ 43    As noted above, defendant argues that the trial court erroneously relied on her drug use at sentencing. However, defendant concedes that the trial court expressly found her drug use was a mitigating factor, which was likely a strong basis for the deviation from the potential 22-year sentence and the ultimate 5-year sentence. Defendant also argues that the trial court punished her for her failure to report to probation and appear in court. However, the trial court specifically stated that it was only considering those failures as part of its consideration of defendant's rehabilitative potential, which is a required factor balanced by the trial court with the seriousness of the offense. See Ill. Const. 1970, art. I, § 11.

16

¶ 44    Here, defendant's alleged errors in the trial court's sentence stem from the court's consideration of required factors to determine the appropriate sentence. At best, defendant's argument, for purposes of plain error, can only contend that the trial court should have placed greater weight on the mitigating factors. However, a defendant's rehabilitative potential is not entitled to greater weight that the seriousness of the offense. *People v. Coleman*, 166 Ill. 2d 247, 261 (1995). The offenses of residential burglary, a Class 1 felony, and possession of a stolen vehicle, a Class 2 felony, are serious charges as shown by the potential sentences for each crime. See 730 ILCS 5/5-4.5-30, 5-4.5-35 (West 2022). The trial court's classification of those charges as "crimes of opportunity" based on the facts in defendant's cases does not diminish the seriousness of those crimes.

¶ 45    The bottom line is that defendant's argument essentially requests this court reweigh the evidence submitted at sentencing and substitute our judgment for that of the trial court with the hopes we will find substantially more rehabilitative potential and classify the crimes as less serious than the trial court. However, such request is prohibited. See *Alexander*, 239 Ill. 2d at 214-15. Here, we cannot find that the trial court's sentence was "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense" (*Stacey*, 193 Ill. 2d at 210). Accordingly, we cannot find the trial court abused its discretion in fashioning defendant's sentence. As no clear error is shown, we reject defendant's request for plain error review and will instead honor defendant's procedural default.

¶ 46    In the alternative, defendant argues that her defense counsel was ineffective for failing to object to the trial court's improper considerations that included her drug use and her failures to appear while on probation. Claims for ineffective assistance counsel are considered under the

standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Albanese*, 104 Ill. 2d 504, 525 (1984).

¶ 47   "To prevail on a claim of ineffective assistance of counsel [under *Strickland*], a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Cathey*, 2012 IL 111746, ¶ 23. This requires a defendant to show "that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694). A failure to satisfy either *Strickland* prong "precludes a finding of ineffective assistance of counsel." *People v. Henderson*, 2013 IL 114040, ¶ 11.

¶ 48   Defendant concedes, "there is a strong presumption counsel's conduct constituted sound trial strategy." Here, it is apparent that defense counsel's argument was an attempt to persuade the court to find defendant's drug use was a mitigating factor. Counsel argued that there was nothing violent about defendant's behavior but that it did "reek of someone who is dependent on drugs." Counsel further conceded that defendant's "own admissions show that she has, as the State had put it, a raging drug problem." Counsel also addressed defendant's probationary failures, including her failure to present to drug treatment, noting that it was "unfortunate" that drug court was no longer an option for defendant and that her addiction got in the way of her seeking the treatment.

¶ 49   Counsel's arguments were clearly successful as the trial court found defendant's drug use was a mitigating factor. As such, counsel's failure to object to the consideration of defendant's drug use was sound and successful trial strategy.

¶ 50   Defendant also argues that her counsel's failure to object to statements related to defendant's failures to appear. However, we note defendant's potential sentences were

18

nonprobationable unless she was ordered to participate in TASC. The trial court's discussion about defendant's actions while previously on TASC probation—specifically her failure to comply with appearances required by TASC—was relevant in determining defendant's rehabilitation potential—and the likelihood of success—if defendant were to be sentenced to TASC probation for a fourth time. Because the trial court's consideration of defendant's rehabilitative potential was not erroneous, defense counsel's failure to object to the court's consideration of defendant's failures to appear was not unreasonable. Accordingly, we reject defendant's claim of ineffective assistance of trial counsel.

¶ 51                                 A. *In absentia* Hearing

¶ 52    We next address defendant's claim of error related to the trial court's denial of her counsel's motion for a hearing pursuant to section 115-4.1(e) of the Code (725 ILCS 5/115-4.1(e) (West 2022)). Defendant requests *de novo* review stating the issue involves a question of statutory interpretation. The State argues, citing *People v. Reyna*, 289 Ill. App. 3d 835, 838 (1997), that the trial court's denial of a request for hearing after a sentence *in absentia* requires a manifest abuse of discretion standard of review.

¶ 53    We note that *Reyna*'s reliance on the manifest abuse of discretion standard is based on language found in *People v. Bushey*, 170 Ill. App. 3d 285, 289 (1988). In *Bushey*, the issue involved whether the defendant met his burden to show that his failure to appear was not his fault and beyond his control. As such, we find the issue slightly different from the one raised here which asks this court to determine if the trial court fulfilled the statutory requirement of having a hearing to determine whether defendant's absence was not her fault and beyond her control. As this case involves statutory interpretation, we will review the issue *de novo*. *People v. O'Brien*, 197 Ill. 2d 88, 91 (2001).

19

¶ 54    A court's primary objective in construing a statute is to ascertain and give effect to the legislature's intent. *Id.* at 90. The statutory language is given its plain and ordinary meaning, and if that language is clear and unambiguous the statute is applied with resort to further statutory construction aids. *Id.* Section 115-4.1(e) states,

> "When a defendant who in his absence has been either convicted or sentenced or both convicted and sentenced appears before the court, he must be granted a new trial or new sentencing hearing if the defendant can establish that his failure to appear in court was both without his fault and due to circumstances beyond his control. A hearing with notice to the State's Attorney on the defendant's request for a new trial or a new sentencing hearing must be held before any such request may be granted. At any such hearing both the defendant and the State may present evidence." 725 ILCS 5/115-4.1(e) (West 2022).

¶ 55    At a section 115-4.1(e) hearing, the court determines whether evidence revealed "good cause" for defendant's absence from the sentencing hearing. See *People v. Pettigrew*, 2018 IL App (4th) 170808, ¶ 15. *Pettigrew* further interpreted section 115-4.1(e) to require the trial court to provide the hearing upon defendant's request. *Id.*; see also *People v. Johnson*, 2019 IL App (4th) 170622, ¶ 16; *People v. Cobian*, 2012 IL App (1st) 980535, ¶¶ 20-22.

¶ 56    On appeal, the parties agree that defense counsel orally requested a section 115-4.1(e) hearing. However, they disagree as to whether the hearing was provided. Accordingly, we will consider this issue to determine whether the statutory requirement was met.

¶ 57    We find the State's claim that the hearing occurred disingenuous. Defense counsel's request was made after the State declined its opportunity to question defendant or present any evidence at the motion to withdraw the stipulation hearing. Neither defense counsel nor the State provided any argument to the court on the issues at stake in a section 115-4.1(e) hearing. Therefore,

while it is apparent that some testimony was provided that would be relevant at a section 115-4.1(e) hearing, it is not apparent that either party was prepared to proceed with such hearing or was proceeding with the requested hearing, at the time of the hearing on the motion to withdraw defendant's stipulation.

¶ 58    Equally relevant is the fact that the trial court's denial of the requested hearing was not based on evidence presented at the hearing on defendant's motion to withdraw her stipulation but was instead based on the criteria the court relied upon during the sentencing hearing. Given the facts and procedural posture of this case, we cannot find the required section 115-4.1(e) hearing was held. The courts "must not read a statute so as to render any part superfluous or meaningless." *People ex rel. Department of Corrections v. Hawkins*, 2011 IL 110792, ¶ 23. Here, neither party presented evidence or argued the issues that would be raised at a section 115-4.1(e) hearing.

¶ 59    The State further argues, as it did in *Cobian* (see *Cobian*, 2012 IL App (1st) 980535, ¶ 21), that the facts underlying defendant's absence from the sentencing—provided at the hearing on the motion to withdraw her stipulation—were insufficient to support granting the requested motion. We decline the State's request to speculate as to the proper outcome in the absence of the required section 115-4.1(e) hearing. See *id.*

¶ 60    "A reviewing court cannot affirm a trial court's dismissal of a motion for a good cause hearing unless an evidentiary hearing was conducted." *Pettigrew*, 2018 IL App (4th) 170808, ¶ 15. Here, we hold that, upon review of the statute, no section 115-4.1(e) hearing was held, despite defense counsel's request for that hearing. Therefore, we remand the case back to the trial court to hold a section 115-4.1(e) hearing.

¶ 61                    B. Ineffective Assistance of Counsel

¶ 62    Finally, defendant argues that her trial counsel was ineffective for failing to file a section 115-4.1(e) motion. As noted above, claims for ineffective assistance counsel are considered under the standard enunciated in *Strickland*, 466 U.S. 668. *Albanese*, 104 Ill. 2d at 525. The standard requires a finding that defense counsel's performance was deficient, and the deficient performance prejudiced the defendant. *Cathey*, 2012 IL 111746, ¶ 23.

¶ 63    Here, defendant does not even get past the first requirement as her sole argument claims that her counsel was required to file a written motion requesting a section 115-4.1(e) hearing. Our review of the statute fails to reveal any requirement that the motion be written or filed with the court. See 725 ILCS 5/115-4.1(e) (West 2022). Accordingly, we cannot find "that counsel's performance was objectively unreasonable under prevailing professional norms" (*Cathey*, 2012 IL 111746, ¶ 23) and deny defendant's claim of ineffective assistance of counsel.

¶ 64                            III. CONCLUSION

¶ 65    For the foregoing reasons, we affirm the trial court's sentence but remand the case back to the trial court to hold a section 115-4.1(e) hearing.


¶ 66    Affirmed and remanded with directions.